No. 24-1449

# United States Court of Appeals
### for the
# Fourth Circuit

MARYLAND ELECTION INTEGRITY, LLC;
UNITED SOVEREIGN AMERICANS, INC.,

*Plaintiffs-Appellants*,

– v. –

MARYLAND STATE BOARD OF ELECTIONS,

*Defendant-Appellee,*

and

BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW,

*Amicus Curiae.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# OPENING BRIEF OF APPELLANTS

C. EDWARD HARTMAN, III
HARTMAN, ATTORNEYS AT LAW
116 Defense Highway
Suite 300
Annapolis, Maryland 21401
(410) 266-3232

BRUCE L. CASTOR, JR.
VAN DER VEEN, HARTSHORN,
   LEVIN, & LINDHEIM
1219 Spruce Street
Philadelphia, Pennsylvania 19107
(215) 422-4194

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1449__     Caption: __Maryland Election Integrity LLC, et al., v. Maryland State Board of El__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Maryland Election Integrity LLC__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:


- 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ C. Edward Hartman, III                Date:      5/20/2024

Counsel for: Appellant

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1449__    Caption: __Maryland Election Integrity LLC, et al., v. Maryland State Board of El__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__United Sovereign Americans, Inc.__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES  ☑ NO

2.  Does party/amicus have any parent corporations?   ☐ YES  ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES  ☑ NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ C. Edward Hartman, III               Date:       5/20/2024

Counsel for: Appellant

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF CASE ................................................................... 2

SUMMARY OF ARGUMENT ........................................................... 4

ARGUMENT ..................................................................................... 7

    THE COURT DID NOT SPECIFY WHICH 12(b)(1) STANDARD WAS APPLICABLE HERE ...................................... 7

    STANDING: STANDARD OF REVIEW ....................................... 9

    APPELLANTS HAVE SUFFERED INJURIES IN FACT ......................... 11

        NVRA: PRIVATE CAUSE OF ACTION ......................................... 12

        APPELLANTS AND THEIR MEMBERS ARE AGGRIEVED PERSONS UNDER THE NVRA ............................... 14

        HAVA CAUSES OF ACTION ........................................................... 16

        OTHER REASONS FOR STANDING .............................................. 20

        ENFORCEMENT OF HAVA VIOLATIONS THROUGH 42 U.S.C. § 1983 ............................................................................. 21

        INJURY UNDER HAVA: ERROR RATES ..................................... 23

        PUBLIC INFORMATION ACT: INJURY ....................................... 24

        MODEM: INJURY .............................................................................. 26

        BLANK BALLOTS ............................................................................ 27

        BLANK BALLOTS: INJURY .......................................................... 29

    APPELLEE CAUSED APPELLANTS' INJURIES .................................... 31

    A FAVORABLE DECISION WILL REDRESS APPELLANTS' INJURIES .......................................................................................... 32

i

ALTHOUGH APPELLANTS' CLAIMS INVOLVE MANY VOTERS, THEY DO NOT ALLEGE A GENERALIZED GRIEVANCE ....................................................................33

MARYLAND ELECTION INTEGRITY HAS MEMBERS WITH STANDING CONFERRING THEM WITH REPRESENTATIONAL STANDING ........................................35

A WRIT OF *MANDAMUS* MUST BE ISSUED IF NO OTHER RELIEF IS GRANTED TO APPELLANTS ................................38

CONCLUSION ........................................................................41

STATEMENT REGARDING ORAL ARGUMENT ............................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adams v. Bain*,
  697 F.2d 1213 (4th Cir. 1982) ..............................................................7

*Allen v. Wright*,
  468 U.S. 737 (1984)................................................................. 12, 22

*Baker v. Carr*,
  369 U.S. 186 (1962)...............................................................................23

*Blessing v. Freestone*,
  520 U.S. 329 (1997)...............................................................................22

*Camreta v. Greene*,
  563 U.S. 692 (2011) ..............................................................................10

*Cheney v. United States Dist. Ct.*,
  542 U.S. 367 (2004)...............................................................................39

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................... 10, 11, 14

*Colón-Marrero v. Vélez*,
  813 F.3d 1 (2016).................................................................................21

*Donald J. Trump for President, Inc. v. Bullock*,
  491 F. Supp. 3d 814 (2020) ..........................................................  33, 38

*Ex parte Siebold*,
  100 U.S. 371 (1879)..............................................................................13

*F.E.C. v. Akins*,
  524 U.S. 11 (1998)............................................................... 11, 16, 33

*FDA v. All. for Hippocratic Med.*,
  219 L. Ed. 2d 121 (2024).....................................................................11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)......................................................... 11, 35, 38

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013)................................................................................10

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) .......................................................................23

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002) ...........................................................................22

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ...........................................................................36

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) ...........................................................................39

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ...........................................................................11

*In re: Coy*,
  127 U.S. 731 (1888) ...........................................................................20

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ...............................................................7

*Lane v. Holder*,
  703 F.3d 668 (4th Cir. 2012) .............................................................36

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................. *passim*

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ............................................................. 12, 13, 33

*Reynolds v. Sims*,
  377 U.S. 533 (1964) ................................................................. 13, 23

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) ...............................................................7

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...........................................................................10

*TransUnion LLC v. Ramirez*,
  594 U.S. 424 ............................................................................ 11, 15

*United Food and Commercial Workers Union Local 751 v.
  Brown Group, Inc.*,
  517 U.S. 544 (1996) ...........................................................................38

iv

*United States v. New York*,
255 F. Supp. 2d 73, 2003 U.S. Dist. LEXIS 5499 (E.D.N.Y. 2003)...................14

*United States v. Saylor*,
322 U.S. 385 (1944)...........................................................................13

*Wilbur v. United States*,
281 U.S. 206 (1930)...........................................................................39

*Will v. United States*,
389 U.S. 90 (1967)............................................................................39


**Statutes & Other Authorities:**

U.S. Constitution Amendment XII ...............................................21

U.S. Constitution Amendment XIV § 2.........................................20

U.S. Constitution Amendment XVII .............................................21

U.S. Constitution Article I § 2 ....................................................20

U.S. Constitution Article I § 4 ............................................. 20, 21

U.S. Constitution Article II § 1 ...................................................21

U.S. Constitution Article III............................................... 10, 12

U.S. Constitution Article III § 2...................................................10

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1367 .........................................................................1

28 U.S.C. § 1651 .......................................................................39

42 U.S.C. § 1973gg-9(b).............................................................14

42 U.S.C. § 1983 ............................................................... *passim*

52 U.S.C. § 20501 .......................................................................1

52 U.S.C. § 20507(a)(4)....................................... 13, 16, 34, 40

52 U.S.C. § 20510 .....................................................................12

52 U.S.C. § 21081 .....................................................................19

52 U.S.C. § 21081(a)(1)(A)(ii) ........................................ 27, 29, 35, 40

52 U.S.C. § 21081(a)(5) ................................................ 18, 39

52 U.S.C. § 21082 ...........................................................19

52 U.S.C. § 21083 ............................................... 16, 19, 21

52 U.S.C. § 21111 ...........................................................19

52 U.S.C. § 21112 ...........................................................19

Fed. R. App. P. 4(a)(1)(A) ...............................................1

Fed. R. Civ. P. 12(b)(1) ...................................................7

Federal Election Commission Voluntary Voting System Guidelines of 2015,
*U.S. Federal Election Commission FEC*. United States, Retrieved
from the Election Assistance Commission,
https://www.eac.gov/sites/default/files/eac_assets/1/28/
Voting_System_Standards_Volume_I.pdf ......................18

Md. Code Ann., Gen. Provis. § 4-362 ..............................25

Md. Code, Crim. Law § 8-606 .........................................26

Md. Code, Elec. Law § 9-102 .....................................26, 27

Md. Code, Elec. Law § 9-103 .....................................26, 27

Voting System Standards § 3.2.1 .....................................23

VSS1990 ..........................................................................17

VSS2000 ..........................................................................17

VVSG 1.0..........................................................................17

VVSG 1.1..........................................................................17

VVSG 2.0..........................................................................17

# JURISDICTIONAL STATEMENT

Appellants, Maryland Election Integrity LLC and United Sovereign Americans, Inc., raise issues under Federal and State election and civil rights laws. As the Appellants' claims are a combination of Federal and State laws, subject matter jurisdiction is based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction for the state law claims under 28 U.S.C. § 1367, because the state law claims are so related to the claims giving the District Court original jurisdiction that they form part of the same case or controversy. Appellants aver violations of the National Voter Registration Act (NVRA) 52 U.S.C. § 20501 *et seq.*. Appellants further claim violations of Maryland laws under Title 3 of Md. Election Law Code Ann. To show how intertwined are the federal and state issues, the federal NVRA and the state Maryland Election Law Code each contain provisions that impose the same requirements on election officials.

Appellants appeal from an order of the United States District Court for the District of Maryland dismissing their case. 28 U.S.C. § 1291 confers the courts of appeals with jurisdiction of appeals from all final decisions of the district courts of the United States. The final order of the United States District Court for the District of Maryland was entered on May 8th, 2024 (See JA322). Appellants timely filed their Notice of Appeal under Fed. R. App. P. 4(a)(1)(A) on May 15th, 2024. This appeal

is from a final order (JA322) dismissing the Appellants' case without prejudice and disposing of all the Appellants' claims.

## STATEMENT OF ISSUES

1.    Whether Maryland voters who are members of the Appellant organization, Maryland Election Integrity, LLC, have individual standing sufficient to confer representational standing upon Maryland Election Integrity, LLC.

[*Suggested Response: Yes*]

## STATEMENT OF CASE

On March 6, 2024, the Appellants filed a complaint in the United States District Court for the District of Maryland claiming numerous issues with the voting system in Maryland as a whole. The issues include but are not limited to inaccurate voter registration records under the National Voter Registration Act ("NVRA"), voting systems that are operating above the maximum allowable error rate set by the Help America Vote Act ("HAVA"), improperly certified voting machines in violation of Maryland law, noncompliance with the Maryland Public Information Act ("PIA"), and voting machines improperly programmed.  Each of these deficiencies violate HAVA.

1. On April 8, 2024, the Appellants amended the complaint (JA32-71) to include

    additional avenues for relief under 42 U.S.C. § 1983 and pleading for a writ

of mandamus compelling Defendant to perform its duties owed to Appellants by ensuring elections are conducted in the manner prescribed by the laws in place designed to produce reliable election results.

2. On April 15, 2024, the Appellants filed a Motion for Temporary Restraining Order and Preliminary Injunction, attaching multiple Affidavits along with supporting exhibits to the motion and to the affidavits. The goal of the Motion for Temporary Restraining Order and Preliminary Injunction was to expedite review of the issues presented by the Appellants and have them remedied before the upcoming Primary and General elections in Maryland.

3. On April 22, 2024, the Defendant filed a Motion to Dismiss for Lack of Jurisdiction.

4. Also, on April 22, 2024, the Defendant filed a Response in Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction.

5. On April 29, 2024, the Appellants filed a Reply to the Response in Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction including multiple Affidavits and exhibits in support thereof.

6. On May 6, 2024, the Appellants filed a Response to the Motion to Dismiss (JA292-312).

7. Shortly thereafter, on May 8, 2024, a Memorandum Opinion and Order granting Defendant's Motion to Dismiss were entered dismissing Appellants' case for a lack of standing. (See JA313, JA322)

## SUMMARY OF ARGUMENT

This case was dismissed in the United States District Court for the District of Maryland upon a finding that Appellants lacked standing. The district court found that members of Maryland Election Integrity lacked standing individually and, therefore, Maryland Election Integrity as a group lacked standing. The court found that it was not clear whether the individual members of Maryland Election Integrity actually voted in any Maryland election. The court found Appellants alleged a generalized grievance shared by all members of the community. The court also found that one argument of Appellants in respect to blank ballots was a hypothetical possibility of a past, speculative injury and that it was unclear whether any member of Maryland Election Integrity made PIA requests.

These findings by the district court were made without a hearing and are premature. The Amended Complaint states a plausible cause of action which at the early stages of the case is sufficient to confer presumptive standing. A complaint must simply *allege* standing; standing need not be *proven* at the pleading stage. *Lujan v. Defenders of Wildlife, 504 U.S. 555,* 561. Appellants alleged actions by Appellee caused injury to their right to vote and to access public information.

Appellants served PIA requests on Appellee and Local Boards of Elections ("LBEs") for voting documentation including configuration reports for the voting machines. This configuration report would confirm or deny whether the voting machines had *modems* attached and whether the machines were configured to automatically accept blank ballots, both of which violate applicable election law. Appellants alleged these requests were denied; yet the court incorrectly decided that this must be *proven* in the complaint rather than simply alleged and proven at a hearing if challenged.

The district court furthermore incorrectly decided that members of Maryland Election Integrity must prove they actually voted in Maryland Elections rather than allege that fact and prove it at a hearing if challenged. Appellants alleged in their Amended Complaint, supported by affidavits, that members of Maryland Election Integrity voted in Maryland elections. The court erred when it distinguished between a facial and factual attack on jurisdiction. If facial, the court must stay within the pleadings in determining whether jurisdiction was alleged. If factual, the court can consider matters outside of the pleadings. The court did not make a finding concerning which was applicable. Appellants may only assume the Court chose to treat Appellee's challenge to jurisdiction as "factual." The Affidavit of David Morsberger states, "I am a registered voter in the State of Maryland and have voted in the previous Maryland elections." (JA6). The Memorandum Opinion (JA313-321)

is unclear as to whether the court took this assertion under oath into account when finding that Appellants failed to prove in their pleading that any of their members were voters in Maryland, but on its face, Appellants suggest the district court erred.

Based *inter alia* on this apparently flawed finding, the district court found Appellants lacked standing. Standing ultimately requires injury, causation, and redressability, all of which were alleged in the Amended Complaint. Such is simply proven by Appellants. Appellee is in possession of voter history data and can easily ascertain whether a named Maryland voter has voted in past elections, and thus be in a position to challenge a plaintiff's standing as a voter which would then trigger a hearing. Addressing the issue of whether Appellants' injury is a generalized grievance shared by the community, Appellants suggest the "whole community" did not make PIA requests on Appellees (JA97-157), Appellees did not deny the "whole community's" PIA requests (JA97-157), it denied Appellants' requests. The "whole community" did not canvass voters to see if registrations were accurate (JA16-31), Appellants did that. The "whole community" did not create a report on the voter registration issues (JA16-31), Appellants did. It was Appellants who informed the "whole community" not the Appellee of the issues (JA16-31, JA74, JA194-291), and the "whole community" could not have realized the voting issues on its own. The Appellants took these actions that distinguished them from the "whole community."

# ARGUMENT

## THE COURT DID NOT SPECIFY WHICH 12(b)(1) STANDARD WAS APPLICABLE HERE

The district court distinguished between a facial and factual challenge on subject matter jurisdiction but did not explicitly express which was applicable to the case at bar nor which standard the court below applied. A challenge to jurisdiction may be either *facial*, (where the complaint fails to allege facts upon which subject matter jurisdiction can be based), or *factual*, (complaining that the jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) In contesting *factual* subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the burden of proof rests with the *plaintiff*. *Richmond*, 945 F.2d at 768. In determining whether jurisdiction exists, the district court, in addition to the averments of the pleadings, may consider evidence outside the pleadings. *Richmond*, 945 F.2d at 768. (JA315-316)

The Memorandum Opinion below suggests that the district court treated Appellee's jurisdictional motion challenging Appellants' standing as a *factual* challenge to the court's subject-matter jurisdiction as opposed to a *facial* challenge meaning the district court was required to apply the analysis in Richmond, *supra*.

Under Richmond, the district court was permitted to consider facts outside of the pleadings. The Affidavit of Plaintiff David Morsberger stating he is "a registered voter in the State of Maryland and [has] voted in the previous Maryland elections," then, was part of the record the court below should have reviewed. (JA6) Moreover, Appellants' Amended Complaint explicitly states, "Maryland Election Integrity LLC is an organization *containing members who are registered voters in the state of Maryland*." (JA34) *Italics* added for emphasis. Yet, the district court wrote that the "Amended Complaint lacks any information about whether Kate Sullivan or other members actually voted in any Maryland election." (JA318-319) By application of Richmond, *supra*., in order to establish the court has subject matter jurisdiction leading to standing, Plaintiffs must aver in their complaint sufficient evidence with the court presuming as true all factual allegations and all reasonable inferences arising therefrom.  Plaintiffs clearly alleged in their Complaint Plaintiff-members of Maryland Election Integrity are registered voters in Maryland with an attached affidavit from one member stating he is a registered voter in Maryland and has voted in past Maryland elections.[1]

---

[1]     Appellants respectfully point out that if the district court found their complaint lacking in regard to members of Maryland Election Integrity actually being registered voters who vote routinely in Maryland elections to establish standing, the district court might have ordered a hearing at which Plaintiffs could introduce evidence of members' voting history, rather than dismissing the action on such grounds. Factual subject matter jurisdiction permits the court to consider evidence outside the "four corners" of the complaint.

The Amended Complaint further avers that Plaintiff-Kate Sullivan has standing to raise election complaints because Baltimore County recorded a high number of *blank* ballots cast. Plaintiff Sullivan thus reasonably feared that Baltimore County recorded her ballot as blank. If Baltimore County did, indeed, record her ballot as blank, Plaintiff Sullivan suffered injury in the past and reasonably fears similar injury in future federal elections without notice to her of any previous recording of her ballot as blank. (JA57). In their Amended Complaint, Plaintiffs alleged Ms. Sullivan *cast* a ballot in a federal election previously. Taking as true that portion of the Amended Complaint alleging Ms. Sullivan voted, the district court should have concluded that Maryland voter, and member of Maryland Election Integrity Ms. Sullivan, actually *did* vote.[2] The district court erred and abused its discretion in finding Appellants failed to establish Plaintiffs were active Maryland voters.

## STANDING: STANDARD OF REVIEW

In their Response to Defendant's Motion to Dismiss (JA292-312), Appellants argued to the court below asserting their standing is found in their Amended

---

[2] Nevertheless, Appellee had no basis for a factual challenge concerning Appellant-members' voting history because Appellee knew or should have known Plaintiff-members' voter history as it maintains records within its control on every Maryland voter, making objections on voter identity and history grounds disingenuous.

Complaint, subsequently supplemented by Affidavits (see JA6-15, JA194-291). To successfully assert standing, a plaintiff alleges  "a legally cognizable interest, or 'personal stake' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)).

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "One element of the case-or-controversy requirement [of Article III] is that plaintiffs must establish they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must establish the three "irreducible" minimum requirements of Article III standing: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

The United States Supreme Court has said that when the plaintiff is a group or organization representing several persons with similar injury, such "representational standing" exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to that organization's purpose, and neither the claim asserted, nor the relief

10

requested, requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

## APPELLANTS HAVE SUFFERED INJURIES IN FACT

The Supreme Court has opined that an injury in fact must be "concrete" meaning that it must be real and not abstract. *TransUnion LLC v. Ramirez*, 594 U.S., at 424. The injury must also be particularized meaning that it must affect the "plaintiff in a personal and individual way." *Lujan*, 504 U.S., at 560. "An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights." *FDA v. All. for Hippocratic Med.*, 219 L. Ed. 2d 121, 135 (2024). Also, the injury must be actual or imminent, not speculative, meaning the injury must have already occurred or be likely to occur in the near future. *Clapper*, 568 U.S., at 409. When a Plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury. *Id*., at 401. As determined by the Supreme Court claims implicating voting rights, "the most basic of political rights, [are] sufficiently concrete and specific" to establish standing. *F.E.C. v. Akins*, 524 U.S. 11, 24 (1998). The standing doctrine as stated by the Supreme Court "ensures that we act as judges, and do not engage in policymaking properly left to elected representatives." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013).

Appellants allege multiple causes of action in their Amended Complaint against Appellee, all of them intertwined with their right to vote. The first injury alleged is the lack of accurate voter registration records in the state. David Morsberger and Kate Sullivan, members of Maryland Election Integrity, conducted a canvass in Maryland to determine whether the voter registration records in Maryland are accurate (JA16-31). They detailed their findings in a report (see JA16-31) and sent it to the Appellee in an effort to resolve the issues and violations of the law they had found. Their intentions were to collaborate with the Appellee and the Local Boards of Elections, not work against them. Appellee ignored them. The findings of their canvass and the facts contained therein were not disputed in the court below.

## NVRA: PRIVATE CAUSE OF ACTION

The NVRA grants a private right of action for violations of the NVRA. 52 U.S.C § 20510 allows "aggrieved person[s]" to bring a civil action for declaratory or injunctive relief with respect to violations of the NVRA. In its historic nature, "the law of Art. III standing is built on a single basic idea – the idea of separation of powers." *Allen v. Wright*, 468 U.S. 737, 752 (1984).  Also, "a litigant to whom Congress accords a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Massachusetts v. EPA*, 549 U.S. 497, 504 (2007) (internal citations and quotation

marks omitted). The NVRA legislation itself specifically allows private causes of action for NVRA violations; and the Supreme Court has specifically held Appellants need not meet "all the normal standards for redressability and immediacy." *Id.*

Appellants found 5,680 registrants who moved at least four years ago and 1,218 active registrants who are deceased (JA38). As stated in the Amended Complaint at JA37, the Maryland General Assembly's Office of Legislative Audits made similar findings in October 2023. The audit found that some people registered twice, attempted to vote twice, and voted twice. Voters who are no longer living in Maryland have voted in Maryland. Voters who are not legally entitled to vote in an election dilute the votes of legal voters. It is a settled legal principle that dilution of a qualified voter's vote is a form of disenfranchisement, *Ex parte Siebold*, 100 U. S. 371 (1879), *United States v. Saylor*, 322 U. S. 385 (1944), *Reynolds v. Sims*, 377 U.S. 533 (1964). (See JA35). Further, Appellants are individuals who have personal knowledge of the findings of their canvass and acted asking for reasonable redress from Appellee to remedy these violations without success. Appellants have, thus, suffered injury under 52 U.S.C § 20507(a)(4), which is a provision of the NVRA requiring the State to make a "reasonable effort" to remove ineligible voters from the voter rolls whether by reason of death, or a change in residence.

The NVRA private cause of action provision does not define who is "aggrieved." However, courts and lawyers need only review reported decisions of

13

cases brought under the NVRA to help determine what constitutes an aggrieved party. See *e.g.*, *United States v. New York*, 255 F. Supp. 2d 73, 2003 U.S. Dist. LEXIS 5499 (E.D.N.Y. 2003) (Interest group could bring action challenging voter registration system implemented by State of New York through defendant agencies, because former 42 USCS § 1973gg-9(b) authorized private right of action for person who was aggrieved by violation of National Voter Registration Act of 1993). Here, Appellants are interest groups who are challenging the voter registration system of their state, implemented through the Appellee. Therefore, by analogy, Appellants are entitled to bring this action.

## APPELLANTS AND THEIR MEMBERS ARE AGGRIEVED PERSONS UNDER THE NVRA

Kate Sullivan and David Morsberger are aggrieved when eligible voters are listed on Maryland voter rolls and the registration system is, generally, corrupted on account of Appellee's failure to take action to properly purge Maryland's voter rolls thus diluting Appellants' votes. Appellants discovered  and documented the maintenance of the voter rolls, told Appellees  of the violations, who failed to take reasonable action to correct the errors. These discrepancies documented by Appellants showing the number of deficiencies contained in Maryland's voter registration system are, so far, uncontested by Appellee. *Clapper, supra.,* requires a Plaintiff to show a sufficient likelihood of future injury when injunctive relief is

sought. Without judicial intervention, Appellee will, almost beyond question, fail to correct the issues with the voter registration system in Maryland in time for the next federal election or for the subsequent federal elections thereafter. As long as Appellees fail to do so Appellants will continue to suffer injury in 2024 and in each federal election in years to come.

Appellants followed the notice requirements of the NVRA (See JA39, JA74). (See also JA306-307 in which Appellants rebut any arguments concerning their failure to comply with the NVRA notice requirements.) Kate Sullivan and David Morsberger's injuries resulting from the NVRA violations are concrete, and "real and not abstract." The issues Appellants claim caused them injury were, themselves, confirmed to be true by the Office of Legislative Audits, and subsequently by Appellants' report (JA16-31) See: *Transunion*, 594 U.S., at 424. Appellants' expert report was more exhaustive than the report from the Office of Legislative Audits because Appellants went door to door to gather voter information and looked at more data points than just deceased and moved registrants. The registration violations affect them in a "personal and individual way." Appellants spent time and resources conducting a citizen's audit of the Maryland registration records, and personally observed the extent of the violations. *Lujan*, 504 U.S., at 560. Appellants spent time and energy on correspondence with Appellee and Local Board of Election personnel raising their findings several times since at least 2022 (See JA198-203).

15

Furthermore, Appellants attended meetings and presented before local boards of elections of the counties in which they reside. Appellant Kate Sullivan and Appellant David Morsberger attempted to address the issues they found with local boards of elections at the local level in an effort to resolve these problems. Appellant Kate Sullivan, a Baltimore County resident, conducted a Baltimore County canvass and saw the effects first-hand of inaccurate and outdated registration records. Kate Sullivan also attended Board of Elections meetings to raise her ongoing findings (See JA205). Appellants personal and individual efforts to remedy issues short of litigation is an injury in and of itself. Based on the language of 52 U.S.C § 20507(a)(4) and the private cause of action included in the NVRA: "Congress, intending to protect voters such as respondents from suffering the kind of injury here at issue, intended to authorize this kind of suit." *FEC v. Akins*, 524 U.S. 11, 20 (1998).

### *HAVA CAUSES OF ACTION*

In the Help America Vote Act ("HAVA") 52 U.S.C.A. § 21083, Congress mandates as follows: HAVA - voting system error rate "…(5) Error RATES.—The error rate of the voting system in counting ballots (determined by taking into account only those errors which are attributable to the voting system and not attributable to an act of the voter) shall comply with the error rate standards established under

section 3.2.1 of the voting systems standards issued by the Federal Election Commission ("FEC") which are in effect on the date of the enactment of this Act."

Congress enacted and President Bush signed HAVA into law in 2002 and it remains the law of the United States to date. The voting standards of the FEC in effect at the time Congress enacted HAVA in 2002 were the Voting Systems Standards Volume I: Performance Standards (2002).[3] Those voting standards, in effect at the time HAVA became law, allowed for one error per 10 million ballot *positions*. A federal election that exceeded an error rate of one error per 10 million ballot *positions* renders a federal election unreliable.

As the HAVA provision enacted in 2002 cited above has not changed, the error rate of one error per 10 million ballot *positions* is currently the law of the United States. A "ballot *position*" refers to the number of individual "choices" a voter could make on a single ballot.  For example, if a particular ballot has thirty little circles for the voter to fill-in or not fill-in, that single ballot would be said to contain thirty ballot positions. A voting system error occurs anytime the voting

---

[3] As of 2021, there have been five iterations of national level voting system standards. The Federal Election Commission published the first two sets of federal standards in 1990 and 2002 (VSS1990 and VSS2000). The Election Assistance Commission then adopted Version 1.0 of the Voluntary Voting System Guidelines (VVSG 1.0, or VVSG2005) on December 13, 2005. On March 31, 2015, the EAC commissioners approved VVSG 1.1 (VVSG2015). On February 10, 2021, the EAC approved VVSG 2.0 (VVSG2021).

scanning machine should have discerned an error, not made by the voter, while counting one of those ballot positions on a scanned ballot.

The FEC desired to clarify the meaning of 10 million ballot *positions* in terms of how many individual ballots "make-up" 10 million ballot *positions* in order to make easier understanding the election "error rates" permissible by HAVA. Experts working for the FEC estimated that 10 million ballot *positions* equaled 125,000 *individual ballots*. (See Federal Election Commission Voluntary Voting System Guidelines of 2015, *U.S. Federal Election Commission FEC*. United States [Web Archive] Retrieved from the Election Assistance Commission, https://www.eac.gov/sites/default/files/eac_assets/1/28/Voting_System_Standards_Volume_I.pdf)

Appellants contend that the "error rate" of "1 per 125,000" is applicable to Maryland registration records which are part of a "voting system." Appellants pled in their Amended Complaint that Appellees violated HAVA by having inaccurate registration records exceeding the maximum allowable error rate set forth in HAVA. 52 U.S.C. § 21081(a)(5) sets standards for voting systems, further defined in the *Voting System Standards* that Appellee is failing to meet. These standards provide safeguards to prevent voting system errors impacting the results of any federal election. Appellants alleged in the Amended Complaint that the number of voting

18

system errors in counting votes was exponentially greater than the maximum allowable error rate (See also JA43-44).

52 U.S.C. § 21111 states:

"[t]he Attorney General **may** (emphasis added) bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title."

The Attorney General has not investigated, nor will he act. The Maryland Office of the Attorney General is defending the Appellee giving rise to the reasonable deduction that neither the Attorney General nor the Attorney General of Maryland have any intention of initiating action to repair the broken election system in Maryland.

52 U.S.C. § 21112 requires states to maintain state based administrative complaint procedures for violations of HAVA. Whether Maryland has created such procedures or not becomes immaterial if there is no governmental enforcement mechanism. Essentially, Maryland (and all states) are required to police themselves with no oversight. When constitutional and significant statutory rights are at stake, administrative complaints without judicial appeal will never be sufficient to remedy violations of those rights.

19

"Hoping" the Attorney General will act on his own, or "hoping" the State of Maryland will act as part of some administrative process without judicial appeal are the speculative causes of action provided in HAVA. That does not mean Appellants are left without a remedy. Congress passed 42 U.S.C. § 1983, which has been used by citizens to enforce their rights through civil actions when other remedies are unavailable. 42 U.S.C. § 1983 provides a cause of action for Appellants here.

### *OTHER REASONS FOR STANDING*

Compliance with HAVA and NVRA is "necessary" to uphold Article 1 section 2 of the US Constitution. Appellants aver that a specific cause of action should not be required for either law because compliance is embedded into a fundamental civil right: the right to vote. Appellee's failure to meet the minimum standard for administrative procedures defined by Congress creates a scenario where a federal election becomes inherently unreliable. Maryland bears the blame under the Fourteenth Amendment section 2 as well as pursuant to the Supreme Court's ruling *In re: Coy*, 127 U.S. 731 (1888). The error rate is a symptom of Maryland' failure to comply with its mandate to coordinate federal elections under Article I sec. IV of the U.S. Constitution. But more broadly, Maryland must comply with every

part of HAVA and NVRA equally.[4] These statutes function to provide a framework by which Maryland and all states may achieve complete operational security. A boundary, or an impenetrable fence around the conduct of federal elections. Any breach in compliance brings the entire system under suspicion.

Appellants further contend that the right to Equal Protection of the law is violated whenever Maryland allows invalid voters equal access to the ballot to vote as valid voters. HAVA defines the standard a mail-in registrant and mail-in voter must meet, for example, in sec 21083. Voters and ballots not meeting that standard should never be counted equally to those that did meet it, because HAVA specifically mandates that those votes be cast provisionally only.

### ENFORCEMENT OF HAVA VIOLATIONS THROUGH 42 U.S.C. § 1983

A civil action for deprivation of rights under 42 U.S.C. § 1983 has been held to be proper for violations of HAVA, despite the Appellee's assertion of an absence of a private cause of action within HAVA's text. (See *Colón-Marrero v. Vélez*, 813 F.3d 1 2016)).  Appellants meticulously defined the law and intent of 42 U.S.C.

---

[4]    While Article I, sec. 4 of the Constitution delegates to the several states the power to conduct federal elections for members of the House of Representatives, extended to the selection of electors for president and vice-president by Article II, sec. 1 (as modified by the 12th Amendment), and to senators by the 17th Amendment, the Constitution grants supreme authority over federal elections to Congress stating clearly the procedures for federal elections "…shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations…"

§ 1983 at JA302-306 and outlined how each of Appellants' claims under HAVA are enforceable through 42 U.S.C. § 1983.

*Blessing v. Freestone*, 520 U.S. 329, 340-341 (1997) sets out three factors to guide an analysis of whether Congress intended to confer a right enforceable through 42 U.S.C. § 1983.

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Appellants analyze their error rate and blank ballot claims under HAVA according to the *Freestone*, *supra.*, factors at JA302-306. Appellants meet the requirements and intent of 42 U.S.C. § 1983 as well as the factors set forth in *Id.*, which "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

The intent of the standing doctrine is to respect and uphold the doctrine of separation of powers. *Allen*, 468 U.S. 737, 752. Congress passed 42 U.S.C. § 1983 to give United States citizens an avenue to secure their constitutional rights, when

other avenues are not available. There is no separation of powers issue here. A civil action through 42 U.S.C. § 1983 is permitted.

## *INJURY UNDER HAVA: ERROR RATES*

In election and voting rights challenges, a plaintiff's standing is naturally entwined with their "individual and personal" right to vote. *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." *Id*. (quoting *Baker*, 369 U.S. at 206)). Here, Appellants have shown that the voting machines in use are producing error rates violative of the statutory threshold, which "is set at a sufficiently stringent level such that the likelihood of voting system errors affecting the outcome of an election is exceptionally remote even in the closest of elections." *Voting System Standards* § 3.2.1. When the error rates are above this threshold, the safeguard to ensuring accurate and reliable elections is not met, which violates the intent of HAVA and the *Voting System Standards*.

In its Memorandum Opinion at JA319, the district court stated that it is not clear how "Defendant's actions helped defeat [Appellants'] supported candidates or causes." HAVA sets forth minimum standards which must be met in federal elections for an election to be reliable. If the minimum standards *are* met, the

election *is* reliable.  If the minimum standards are *not* met, the election is *unreliable*. It makes no difference whether Appellants show whether the outcome was affected by Maryland failing to meet HAVA standards. What matters is whether the standards were met or not because meeting the standards is what HAVA requires without further inquiry into the effect failing to meet the standards had on the election. The very purpose of the HAVA standards is to prevent voting system errors from affecting the outcome of an election. Appellants aver that statutory error rates substantially in excess of those allowed by HAVA grant them a 1983 cause of action against Maryland. The interpretation contained in the district court's Memorandum Opinion mis-applies HAVA as requiring a showing of causation, that the errors could have affected the outcome of elections, where HAVA only demands its threshold for allowable errors be met whether an election might be affected or not.

### PUBLIC INFORMATION ACT: INJURY

Once Appellants deduced the existence of excessive voter registration records error rates and voting system error rates, Appellants told Appellee and the local boards of elections (See JA194-291). They also began sending PIA public information requests to Appellee and the local boards of elections (See JA97-157) inquiring about the voting machines in service and voting activity reports that are created by those machines. Most requests, if not all, were met by the same response or a similar one stating we do "not have any responsive documents." There were in

fact responsive documents because configuration reports are automatically printed upon voting machine startup (See JA164, JA168).

MD. CODE ANN., GEN. PROVIS. § 4-362 provides a cause of action to a person who is "denied inspection of a public record…" Appellants and members of the organizations did send PIA requests to Appellee and the local boards of elections. Appellants alleged this multiple times in their Amended complaint, for example JA54, which is all that is necessary for the court to find a cause of action. A complaint requires allegations, not proof. The district court erred in its Memorandum Opinion and essentially used a different standard in finding that "it is not clear whether Kate Sullivan or any member of Maryland Election Integrity made the requests. Such information is needed to show a redressable injury in fact…" (See JA320). An allegation that can be admitted or denied should have sufficed at the district court, and had the district court followed that procedure the evidence would have shown, either by agreement or upon documentary evidence and testimony, an injury in fact did occur.

Appellee informed the local boards of elections *not* to respond to the PIA requests by Appellants (See JA312). The email address listed in JA312 is the same email address used for the PIA requests Appellants sent (See JA97-157). Appellants were not just denied public records; upon information and belief, the public records

were intentionally concealed from them. This creates a very real injury and proves

causation; it is not hypothetical or speculative and is fairly traceable to the Appellee.

### MODEM: INJURY

Multiple other claims brought by Appellants stem from them being denied

public records. The first claim is related to modems. Modems are inherently risky to

efforts to maintain election integrity because they allow communication from the

voting machine to other computers including computers being operated by

"hackers."  To eliminate that threat, the Election Assistance Commission forbids

modems from being used on voting machines (See JA87-88). Using voting machines

with modems attached also violates Md. Code, Elec. Law §§ 9-102, 103. The

configuration reports requested by Appellants contain information to confirm or

deny whether a modem was attached to any given machine (See JA191-193).

It is a fact that modems were, at one point, attached to voting machines in

Maryland (See JA158). It is also a fact that modems are not supported by the

*Voluntary Voting System Guidelines* (See JA91-93). Appellants were requesting

reports that would confirm or deny whether modems are still attached to the voting

machines today and were denied this by Appellee and the local boards of elections.

It is also a crime to conceal a public record pursuant to Md. Code, Crim. Law § 8-

606.

Md. Code, Elec. Law §§ 9-102 & 103 require decertification of voting machines that no longer "protect the secrecy of the ballot", "protect the security of the voting process", and "count and record all votes accurately". Thus, any modems connected to Maryland voting machines destroy the security of the voting process. Participating in unsecure elections injures the Appellants. Appellants requested from Appellee and the local boards of elections voting machine configuration reports which show whether modems are still attached to the machines. The reports were not provided.

### BLANK BALLOTS

There were 82,356 *blank* ballots cast in the 2022 General Election in Maryland. 52 U.S.C. §21081(a)(1)(A)(ii) requires voting systems to "provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" This provision of HAVA taken in consideration of the capabilities of Election Systems & Software (ES&S) voting machines, shown in JA175-182, provides an explanation for how 82,356 people could be recorded as casting a blank ballot. The voting machines can be configured to automatically accept blank ballots, undervotes, and overvotes. This means that if a voter does not bubble in their ballot dark enough or the machine has

27

an error, the votes could be recorded as cast blank, and the machine would automatically accept it *without notice to the voter of a deficiency*.

The configuration of voting machines, as more thoroughly explained in the Amended Complaint (See JA55-59), can be seen in the configuration reports the voting machines print. Appellants requested these reports and were ignored. Appellants allege that Appellee has intentionally concealed the configuration reports from Appellant so Appellant would have no record to show the illegal use of modems, or the configuration of the machines allowing blank ballots to be automatically accepted. Appellees prevented Appellants from obtaining these open records and thus suffered injury at the hands of Appellees' denial of Appellants' requests for these records because Appellee guided local boards of elections to not respond (see JA312).

Appellants suggest that if Appellee had provided the configuration reports for Baltimore County voting machines, and those reports proved what Appellants allege, such would advance Appellants' standing argument creating a motive for Appellee to refuse to turn over this supposedly public information. Appellant Kate Sullivan is a resident of Baltimore County. There were 19,678 blank ballots cast out of 277,788 ballots counted in the 2022 federal election (See JA184). Seven (7) percent of the total turnout of voters, then, cast a blank ballot. This huge number is inexplicable by anything other than the configuration of the voting machines. How does Ms. Sullivan

know her ballot was not one of those received as blank?  That she does not know whether her vote counted or not constitutes injury to her.

***BLANK BALLOTS: INJURY***

Standing analysis in regard to 52 U.S.C. §21081(a)(1)(A)(ii) is as follows. The statute requires a voting system provide voters an opportunity to change the ballot or correct any error before the ballot is cast and counted. If the machines were configured to automatically accept blank ballots, the machines do not provide the voter an opportunity to correct that condition before the ballot is cast and counted. This violates the statute and denies unsuspecting voters their right to cast a ballot showing their intent. Appellants aver that is a clear injury. A cause of action is available for such injury under 42 U.S.C. § 1983 (See JA302-305).

Seven percent of the votes in Baltimore Couty cast were blank. Kate Sullivan's could have been one of them. This is a real injury that may have happened to her. The issue is that there is no way to see who a voter voted for because that information is protected. Further, any person's ballot that was cast blank could have been added as a plaintiff in the instant case if this information was available. There is no way to prove whose ballot was cast blank, but there is an easy way to see if the voting machines are automatically accepting them blank by reviewing the configuration reports for each machine.

29

Whether or not there is a way to prove who cast a blank ballot, there most certainly is an injury to any person whose right to vote was nullified by the Appellee's and local boards of elections employees configuring machines to automatically accept blank ballots. These persons were not given an opportunity to correct their ballots. Configuring the machines to stop automatically accepting blank ballots to give the voter an opportunity to fix the ballot would redress that injury.

The district court opinion calls Appellants blank ballot claims a "mere hypothetical possibility of a past, speculative injury" and it "does not give rise to a certainly impending injury." (JA320). Appellants suggest the district court erred in so finding. The injury could not be more real. It strains credulity that seven percent of voters in Baltimore County took the trouble to actually cast ballots and intentionally chose not to vote for any candidate. But the district court apparently believed that did, indeed, happen, for that is the only way those persons' votes could legitimately be recorded as having cast blank ballots. In concrete terms, the court below ruled it was reasonably possible that 82,356 people in the state intentionally cast a blank ballot. Again, this strains credulity: surely 82,356 people did not take

the time out of their day to vote only to cast a completely blank ballot.[5] It is not possible to prove a particular injury to Kate Sullivan in this situation, but she has the knowledge that her marked ballot may have been cast blank, which creates a very real fear that her future marked ballots will be recorded as blank. Appellants contend that this Honorable Court ought to conclude that such a fear is the kind of threatened injury that confers a voter like Ms. Sullivan with standing.

## APPELLEE CAUSED APPELLANTS' INJURIES

The Supreme Court has ruled that Appellants must prove their injury is "fairly traceable" to the action or inaction of the Appellee. *Lujan*, 504 U.S., at 560. Pertaining to the voter registration records and error rates, the inaction of Appellees to keep the voter registration records up to date and accurate are a cause of Appellants' injury. The actions of the Appellee to conceal or otherwise not provide public records especially concerning the configuration of voting machines is another source of injury. The actions of the Appellee in configuring voting machines to accept blank ballots is fairly traceable to the high number of blank ballots seen in

---

[5]    Appellants aver their complaint is entitled to have its averments accepted a true with all reasonable inferences derived therefrom. Appellants pled the number of blank ballots cast and argue that the court below failed to afford them the reasonable inference that so many voters would not have intentionally cast blank ballots.

Maryland, and specifically in Baltimore County, which creates a third injury to Appellees.

Appellee is the entity responsible for administering elections in Maryland. Appellee is responsible for administering federal elections in accordance with state and federal laws Appellee failed to do so (in the light most favorable to Appellants) making traceability back to Appellees as the obvious cause. These well-pled facts confer standing upon Appellants.

**A FAVORABLE DECISION WILL REDRESS APPELLANTS' INJURIES**

Applying the test established by the Supreme Court, the last prong of the standing test is: "that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S., at 561. Appellants filed a Motion for Temporary Restraining Order and Preliminary Injunction in the district court seeking an expedited resolution to their injuries. It now will take action from this Court to resolve the issues Appellants pose, as time is short and the potential great for affecting more voters' rights. This is clear when considering the audit done by Maryland's Office of Legislative Audits (cited to on JA37), which proves discrepancies in the voter registration records. Instead of resolving those issues, Appellees refute the findings contained in the Legislative Audit. Appellants aver that Appellees will continue to fight Maryland's own findings and the Appellants unless specifically required to fix them by this Honorable Court.

## ALTHOUGH APPELLANTS' CLAIMS INVOLVE MANY VOTERS, THEY DO NOT ALLEGE A GENERALIZED GRIEVANCE

Persons do not have standing to sue when they claim an injury that is suffered by all members of the public but, "where a harm is concrete, though widely shared, the Court has found 'injury in fact'" *FEC v. Akins*, 524 U.S. 11, 24 (1998). In fact, the Supreme Court has been clear that "where large numbers of voters suffer interference with voting rights…" the interests related to that are sufficiently concrete to obtain the standing necessary to seek redress in an Article III Court. *Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 827-828 (quoting *FEC v. Akins*, 524 U.S. 11, 24 (1998)).

In *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) the "…EPA maintain[ed] that because greenhouse gas emissions inflict widespread harm, the doctrine of standing presents an insuperable jurisdictional obstacle." The court found that the "EPA's steadfast refusal to regulate greenhouse gas emissions presents a risk of harm to Massachusetts that is both 'actual' and 'imminent.'" Here, harms implicating voting rights are generally widespread injuries, and affect many people. However, the harms are of a type still reviewable by an Article III court like the harms were in the cases cited above.

Appellee has duties under HAVA and the NVRA. Appellee has steadfastly refused to regulate the voter registration records according to the statutory standard

provided by 52 U.S.C § 20507(a)(4), and other provisions of the NVRA, and relevant state election law. 52 U.S.C § 20507(a)(4) says the state shall "…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…" by reason of death or a change in residence. Appellee has failed to conduct a reasonable effort to correct the voter rolls. For example, people who moved at least four years ago are still listed on the voter registration records. This invites bad actors to take advantage of the outdated registration records by way of mail in voting and perhaps by other means.

Under HAVA, Appellee has refused to acknowledge the violative error rates alleged. Voting system errors in counting votes at the scale Appellants have documented are more than significant (See JA22). Although this affects all voters in Maryland, Appellants also use the voting system and voting machines. This injures their right to vote in an election free of errors. The relevant provision of HAVA is intended to benefit voters, and the election process, so that errors do not affect votes to the point that an election becomes unreliable. Although widespread, the harm to Appellants is real.

The high number of blank ballots is not a generalized grievance either. Just because any voter in Baltimore County or the state of Maryland could cast a blank ballot due to the faulty configuration of the machines, does not mean that the injury to Appellants is not real, and not fairly traceable to Appellee's conduct. The voting

system is required to notify the voter of defects to their ballots. If it does not, the voting system overseen by Appellees violates 52 U.S.C § 21081(a)(1)(A)(ii). Election employees configure the machines. Over 80,000 people in Maryland cast a blank ballot in the 2022 General Election. This injury is widespread, but that does not make it generalized, nor is it hypothetical or speculative.[6] There can be no greater injury to a single voter's rights than their vote not counting in the way the voter intended and cast it. The prevalence of blank ballots surely is a function of the voting machines, and thus the people who program and configure those machines.

## MARYLAND ELECTION INTEGRITY HAS MEMBERS WITH STANDING CONFERRING THEM WITH REPRESENTATIONAL STANDING

The Supreme Court has held that representational standing exists when an organization's "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. 167, 181. The first prong of this test,

---

[6]    Query whether Appellee may reasonably argue that the scope of errors in an election can become so big as to truly affect every voter in Maryland and thus avoid judicial review by saying the scope of our mistakes is too great to confer standing on any person or organization that is a subset of the entire voter universe?  Surely standing (and thus access to the court) cannot be obviated by making errors under prevailing law so great as to apply to everyone.

whether individual members of Maryland Election Integrity have standing, is laid out above.

Representational standing also requires the interests at stake in this lawsuit be germane to Maryland Election Integrity's purpose. Here, Maryland Election Integrity was formed for the purpose of resolving violations of Maryland law and restoring trust in Maryland Elections (JA40). An organization "may suffer an injury [in its own right] when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). The Memorandum Opinion at JA318 states that "[a]lthough the company's mission might theoretically be impeded by the alleged voting violations, the company does not appear to conduct any regular activities for achieving that mission besides bringing the instant lawsuit and conducting investigations to support the lawsuit." Although Maryland Election Integrity was not legally formed until shortly before Appellants filed the Complaint and Amended Complaint, the members of the organization were conducting activities in furtherance of its purpose long before that.

The district court's opinion quoted in the above paragraph is in error. Kate Sullivan told the Baltimore County and State Board of Elections as early as 2022 of election discrepancies and sought information and explanations about the discrepancies she had seen (See JA194-227). David Morsberger contacted the Anne

Arundel County Board of Elections regarding issues he had observed (See JA228-291). Ms. Sullivan issued a press release putting Appellee on notice of their violations of HAVA and the NVRA (See JA74). Maryland Election Integrity and its members Kate Sullivan and David Morsberger, clearly tried to work within the system framework, supervised by Appellee and local boards of elections, to correct what they had found. It was only after nothing was done by Appellee and local boards of elections that Maryland Election Integrity was formed, and the Complaint and this Amended Complaint were filed.

Maryland Election Integrity and its members have a clear mission to guard the sanctity of Maryland's federal elections. The company's mission is being impeded by the various violations of federal and state law outlined above compounded by the lack of transparency in regard to public information requests. It is impossible to have faith in elections when Appellees restrict requested public election information from Maryland residents desiring to verify the sanctity of the process. Appellee's actions restricting the flow of public information impedes Plaintiff-Organization's efforts to carry out its mission of resolving voting violations and restoring public trust.[7] The district court erred in finding otherwise.

---

[7]    A County Bulletin issued by the Appellee to the Local Boards of Elections (JA312), is a great example of how Appellee is impeding Maryland Election Integrity's mission. Appellee chose a single email address from which it received PIA requests and told local boards of elections that Appellee had complied with the

The last prong the court must consider in applying the Supreme Court's *Friends of the Earth*, *supra*. test is whether participation of the individual members of Maryland Election Integrity is necessary. When injunctive relief is sought, participation of the individual members "is not normally necessary." *Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 827-828 (2020) (quoting *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996)). Further, "the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy." *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 557 (1996). Here, Appellants Amended Complaint is for injunctive relief. Appellants respectfully suggest that there are no issues effecting administrative convenience and efficiency that could be presented by such a small number of members of Maryland Election Integrity involved.

## A WRIT OF *MANDAMUS* MUST BE ISSUED IF NO OTHER RELIEF IS GRANTED TO APPELLANTS

This action is in the nature of a writ of *mandamus* as Appellants are pleading for the Appellee to perform non-discretionary duties codified at the federal and state

---

PIA requests. Additional requests for public information from then on Appellees ignored the law simply because the requests originated from the same email as the original request. Appellee never looked at the contents of these requests. Instead, Appellee simply refused the requests administratively. This not only violates the law; it *directly* impedes Maryland Election Integrity's mission.

level, which are owed to the Appellants. The duties are imposed by HAVA, the NVRA, and state laws.

Although not plead in Appellants Amended Complaint, The All Writs Act, codified at 28 U.S.C. § 1651 grants this court the power to "issue all writs necessary or appropriate in the aid of their respective jurisdictions and agreeable to the usages and principles of law." A writ of *mandamus* is warranted where "(1) no other adequate means exist to attain the relief, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (quoting *Cheney v. United States Dist. Ct.*, 542 U.S. 367, 380–81 (2004))

Writs of *mandamus* apply to ministerial actions. A "ministerial action" is a duty in a particular situation so plainly prescribed as to be free from doubt and equivalent to a positive command. *Wilbur v. United States*, 281 U.S. 206, 218 (1930); see also *Will v. United States*, 389 U.S. 90 (1967).

Under HAVA, the two provisions at issue impose mandatory language on Appellee and election employees. For example, 52 U.S.C. § 21081(a)(5) states that the "error rate of [a] voting system in counting ballots…shall comply with the error rate standards established under section 3.2.1 of the voting systems standards issued

by the Federal Election Commission[.]" Use of the word "shall" constitutes mandatory language.

Furthermore, 52 U.S.C. § 21081(a)(1)(A)(ii) states voting systems "shall…provide the voter with the opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted (including the opportunity to correct the error through the issuance of a replacement ballot if the voter was otherwise unable to change the ballot or correct any error.)" The use of "shall," again, constitutes mandatory language. Here, the requirement is for voting systems, but election employees subject to judicial authority are responsible for configuring and handling voting machines.

The NVRA 52 U.S.C. § 20507(a)(4) states, "each State shall…conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of the death of the registrant; or a change in the residence of the registrant." NVRA, therefore contains mandatory language. Yet Appellees are failing to meet even this relatively lax standard because Appellees are making no reasonable efforts to remove from the voter rolls persons no longer eligible to vote.

Appellants' will respectfully request that a Writ of *Mandamus* issue requiring Appellee and all entities within the control of Appellee to comply with the dictates

of existing federal and state law upon remand for that purpose for hearing, proper findings of fact and conclusions of law.

## CONCLUSION

The relief requested by Appellants is thoroughly set forth in the Amended Complaint at JA59-70 (Also see Motion for Temporary Restraining Order and Preliminary Injunction). At its essence Appellants are seeking the correction of multiple election issues they have identified in Maryland that are in violation of existing federal and state law affecting their right to vote. These issues can be remedied. Appellants are seeking the correction, or at least the commencement of the process to correct, the issues identified. Federal elections in Maryland will continue into the future from 2024 onwards. Appellants respectfully suggest there is no reason to conclude that the issues they have identified will not continue and even worsen in the years ahead.

Appellants respectfully request this Honorable Court expedite oral argument, and address the issues raised in the instant appeal in a timely fashion, in the hope there might be a resolution before the next federal General Election that is held in Maryland.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants are filing a motion to expedite this appeal contemporaneously with this brief. The issues Appellants pose are of a nature that requires the utmost urgency and review. Appellants filed a Motion for Temporary Restraining Order and Preliminary Injunction in the court below attempting to reach this same goal. The integrity and trust of Maryland elections are of the utmost importance to Appellants, and an expedited briefing and oral argument period is in the best interest of this case as elections in Maryland will continue to be administered while the violations identified by Appellants will continue absent judicial reviewed and remedy.

Appellants respectfully assert that this Honorable Court may consider this matter on the existing record and such claims as are supported by the record. Oral argument should not be delayed as important constitutional rights are at stake which Appellants contend are of the utmost importance to them, the people of the State of Maryland and to this Honorable Court.

Respectfully Submitted,

/s/ C. Edward Hartman, III
C. Edward Hartman, III
Hartman, Attorneys at Law
116 Defense Highway, Ste. 300
Annapolis, MD 21401
(410) 266-3232
Ed@hartman.law

Bruce L. Castor, Jr.
(PA ID No. 46370)
van der Veen, Hartshorn, Levin,
& Lindheim
1219 Spruce St.
Philadelphia, PA 19107
(215) 422-4194
bcastor@mtvlaw.com

*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*9,522*] words.

    [     ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: July 9, 2024                    /s/ C. Edward Hartman, III
                                       *Counsel for Appellants*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 9th day of July, 2024, I caused this Brief of

Appellants and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Daniel M. Kobrin
OFFICE OF THE ATTORNEY
  GENERAL OF MARYLAND
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6472

*Counsel for Appellee*

/s/ C. Edward Hartman, III
*Counsel for Appellants*