No. 24-1449
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**MARYLAND ELECTION INTEGRITY, LLC, et al.,**

*Plaintiffs-Appellants*,

**v.**

**MARYLAND STATE BOARD OF ELECTIONS,**

*Defendant-Appellee.*
_____

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)
_____

**BRIEF OF APPELLEE**
_____

ANTHONY G. BROWN
Attorney General of Maryland

DANIEL M. KOBRIN
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.state.md.us
(410) 576-6472
(410) 576-6955 (facsimile)

August 8, 2024

Attorneys for the Maryland State
Board of Elections

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ........................................................................1

ISSUES PRESENTED FOR REVIEW .................................................................2

STATEMENT OF THE CASE ...............................................................................2

    Pertinent Federal Election Laws .......................................................................2

    Maryland Election Integrity Alleges Election Maladministration .................4

    The Complaint's Standing Allegations ...........................................................7

SUMMARY OF ARGUMENT ...............................................................................9

ARGUMENT .........................................................................................................11

I.    DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION IS REVIEWED DE NOVO; THIS COURT CAN AFFIRM THE DISMISSAL ON STANDING OR ANY GROUND APPARENT IN THE RECORD. .....................................................11

II.    THE DISTRICT COURT WAS CORRECT TO DISMISS THE COMPLAINT BECAUSE MARYLAND ELECTION INTEGRITY DID NOT SHOW THAT ITS MEMBERS SUFFERED AN ELECTORAL INJURY-IN-FACT. ................................11

    A.    Maryland Election Integrity Did Not Allege That Its Unnamed Members Suffered a Cognizable Injury. .............................................13

    B.    Maryland Election Integrity Did Not Allege That Kate Sullivan Suffered a Cognizable Injury. ...........................................................15

    C.    Maryland Election Integrity Did Not Allege That David Morsberger Was a Member. ...................................................................18

    D.    Maryland Election Integrity Did Not Allege That Any Member Was Harmed by the State Board's Response to Public Information Requests. .......................................................................19

III.    THE DISTRICT COURT ALSO LACKED JURISDICTION OVER MARYLAND ELECTION INTEGRITY'S COMPLAINT BECAUSE IT DID NOT PRESENT A COGNIZABLE FEDERAL QUESTION. ....................................................20

    A.    Maryland Election Integrity's Requests for Federal Statutory Relief Could Not Provide the District Court with Federal Question Jurisdiction. .............................................................22

    B.    Maryland Election Integrity's Allegations Relating to HAVA, the NVRA, and Section 1983 Did Not Present a "Substantial" Federal Claim. ..................................................................23

CONCLUSION ..........................................................................26

REQUEST FOR ORAL ARGUMENT .....................................................28

CERTIFICATE OF COMPLIANCE .......................................................28

TEXT OF PERTINENT PROVISIONS ...................................................29

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott v. Perez*, 585 U.S. 579 (2018) ....................................................16

*American Civil Rts. Union v. Philadelphia City Comm'rs*, 872 F.3d 175 (3d Cir. 2017)...............................................................................3, 23

*Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017)............................................ 11, 18

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) .................................................23

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) ...........................................23

*Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) ............................ 11, 12, 13, 17

*California v. Texas*, 593 U.S. 659 (2021)................................................................22

*CGM, LLC v. BellSouth Telecomms.*, 664 F.3d 46 (4th Cir. 2011).........................22

*Davis v. Pak*, 856 F.2d 648 (4th Cir. 1988) ..................................................... 20, 21

*De Simone v. VSL Pharms.*, 36 F. 4th 518 (4th Cir. 2022)....................................15

*Dinkins v. Region Ten CSB*, 289 F. Supp. 3d 756 (W.D. Va. 2018) ......................20

*Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021) ........................................................25

*Ex Parte Young*, 209 U.S. 123 (1908) ...................................................................25

*Georgia Voter Alliance v. Fulton County*, 499 F. Supp. 3d 1250 (N.D. Ga. 2020)23

*Gibson Frederick County*,  2022 WL 17740406 (D. Md. Dec. 16, 2022) ..............14

*Gill v. Whitford*, 585 U.S. 48 (2018) ......................................................... 12, 13, 14

*Gurley v. Superior Ct. of Mecklenberg County*, 411 F.2d 586 (4th Cir. 1969).......23

*Hagans v. Levine*, 415 U.S. 528 (1974).................................................................21

*Horne v. Flores*, 557 U.S. 433, (2009) ...................................................................7

*Judicial Watch v. Pennsylvania,* 524 F. Supp. 3d 399 (M.D. Pa. 2021) .................26

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) .............................................12

*Lance v. Coffman*, 549 U.S. 437 (2007) ....................................................................11

*Lovern v. Edwards*, 190 F. 3d 648 (4th Cir. 1999) ............................................ 20, 27

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................... 12, 17

*Moore v. Circosta*, 494 F. Supp. 3d 289 (M.D.N.C. 2020) .....................................16

*North Carolina St. Conf. of the NAACP v. Raymond*, 981 F.3d 295
   (4th Cir. 2020).......................................................................................................10

*Oneida Indian Nation v. Oneida County*, 414 U.S. 661 (1974) .............................21

*PEM Entities v. County of Franklin*, 57 F.4th 178 (4th Cir. 2023) .................. 20, 21

*Reynolds v. Sims*, 377 U.S. 533 (1964)....................................................................13

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 572 (6th Cir. 2004)...23

*Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208 (1974).................12

*Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014)....................................................4, 26

*Southern Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at
   Broadlands*, 713 F.3d 175 (4th Cir. 2013) ................................................ 12, 19

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Univ.*,
   600 U.S. 181 (2023)...........................................................................................13

*Texas Voters Alliance v. Dallas County*, 495 F. Supp. 3d 441 (E.D. Tex. 2020) ...23

*Timpson v. Anderson County Disabilities and Special Needs Bd.*, 41 F.4th 238
   (4th Cir. 2022)......................................................................................................24

*United States v. Hayes*, 515 U.S. 737 (1995) .........................................................14

*White v. City of Annapolis*, 439. F. Supp. 3d 522 (D. Md. 2020)............................23

**Statutes**

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1331 .......................................................................2, 11, 22

28 U.S.C. § 1361 ..............................................................................26

28 U.S.C. § 1367 ................................................................................2

28 U.S.C. § 2201 ..............................................................................25

42 U.S.C. § 1983 ..............................................................................28

52 U.S.C. § 20503 ..............................................................................4

52 U.S.C. § 20507 ..............................................................................4

52 U.S.C. § 20510 .......................................................................4, 5, 29

52 U.S.C. § 20921 ..............................................................................3

52 U.S.C. § 20971 ..............................................................................3

52 U.S.C. § 21111 ............................................................................27

52 U.S.C. § 21112 ..........................................................................4, 28

52. U.S.C. § 21081(a) ..........................................................................3

Md. Code Ann, Gen. Prov. § 4-362 (LexisNexis 2019) ...........................22

Md. Code Ann., Elec. Law § 2-101 (LexisNexis 2023) ...........................30

Md. Code Ann., Elec. Law § 2-102 (LexisNexis 2023) ...........................30

Md. Code Ann., Elec. Law § 2-201 (LexisNexis 2023) ...........................30

Md. Code Ann., Elec. Law § 2-202 (LexisNexis 2023) ...........................30

No. 24-1449

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

## MARYLAND ELECTION INTEGRITY, LLC, et al.,

*Plaintiffs-Appellants*,

v.

## MARYLAND STATE BOARD OF ELECTIONS,

*Defendant-Appellee*.

_____

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)

_____

## BRIEF OF APPELLEE

_____

## JURISDICTIONAL STATEMENT

This appeal arises from a complaint filed by a Maryland limited liability company and a Missouri nonprofit corporation (together, "Maryland Election Integrity") against the Maryland State Board of Elections ("the State Board") seeking declaratory and injunctive relief, as well as a writ of mandamus. Maryland Election Integrity alleged that the State Board had violated federal and state laws governing elections, and state laws governing public information access, in

administering the State's voter registration system and voting system. (J.A. 36-60.) Maryland Election Integrity asserted that the district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. The State Board disagrees, for the reasons set forth at pages 9-26 below.

On May 8, 2024, the district court dismissed the operative complaint, without prejudice, for lack of standing (J.A. 322); the State Board agrees with that conclusion, for the reasons set forth at pages 11-20 below. Maryland Election Integrity noted an appeal on May 15, 2024. This Court has appellate jurisdiction under 28 U.S.C. § 1291 to review the final judgment of the district court.

## ISSUES PRESENTED FOR REVIEW

1.    Was the district court correct to dismiss the case for lack of standing, where Maryland Election Integrity failed to show that any of its individual members were injured by the election maladministration that it alleged?

2.    Alternatively, was dismissal for lack of subject matter jurisdiction appropriate because Maryland Election Integrity's only purported federal claims were insubstantial and obviously without merit?

## STATEMENT OF THE CASE

### Pertinent Federal Election Laws

The Help America Vote Act ("HAVA") "was enacted in 2002 to help improve the equipment to cast votes, the way registration lists are maintained, and how

polling operations are conducted." *American Civil Rts. Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 180 (3d Cir. 2017).  HAVA imposes requirements on "voting systems used in an election for Federal office," including standards for audit capability, accessibility, and error rates.   52. U.S.C. § 21081(a).  HAVA also establishes the Election Assistance Commission, *id.* § 20921, which, among other duties, provides for the "testing, certification, decertification, and recertification of voting system hardware and software," *id.* § 20971(a)(1).  HAVA does not require states to have their voting systems tested or certified by the Commission.  *Id.* § 20971(a)(2).

The National Voter Registration Act ("NVRA") standardizes the means by which states administer their lists of registered voters.  It sets forth procedures that each state must put in place to enable a person to apply to register to vote.  52 U.S.C.

HAVA has two enforcement mechanisms.  First, the law authorizes the United States Attorney General to seek declaratory and injunctive relief "as may be necessary to carry out" the voting system requirements codified at 52 U.S.C. § 21081. 52 U.S.C. § 21111 And second, the law requires states that receive HAVA funding to "establish and maintain State-based administrative complaint procedures" for the adjudication and disposition of complaints relating to HAVA's requirements.  52 U.S.C. § 21112(a)(1), (2)(B).  HAVA does not provide a private cause of action against election officials for their administration of voting systems.

The National Voter Registration Act ("NVRA") standardizes the means by which states administer their lists of registered voters.  It sets forth procedures that each state must put in place to enable a person to apply to register to vote.  52 U.S.C.

§ 20503(a).  The law also bars a state from purging eligible voters from its voter rolls, permitting removal of a person from a voter registration list only because of that person's request, death, disability due to conviction or incapacity, or change in residence.  *Id.* § 20507(a)(4).  Finally, the NVRA requires each state to maintain publicly accessible records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  *Id.* § 20507(i)(1).

Congress entrusted enforcement of the NVRA's requirements to both the Attorney General and private individuals.  The law authorizes the Attorney General to institute a civil action for declaratory and injunctive relief "as is necessary to carry out [the NVRA]."  *Id.* § 20510(a).  Additionally, the NVRA creates a private cause of action for "a person who is aggrieved" by a violation.  *Id.* § 20510(b)(1).  That private cause of action, though, requires a plaintiff to transmit timely notice of a claim prior to filing suit.  *Id.* § 20510(b)(2). (3).  Failure to provide that notice is grounds for dismissing a private plaintiff's suit.  *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014).

**Maryland Election Integrity Alleges Election Maladministration**

Plaintiffs in the district court were a Maryland limited liability company, Maryland Election Integrity LLC; and a Missouri nonprofit corporation, United

4

Sovereign Americans.  (J.A. 32-33 ¶¶ 1-2.)  Their complaint[1] accused the State Board of mismanaging state electoral operations in six ways.  First, it alleged that the State's voter registration list contained 79,392 "apparent registration violations" between August 2021 and July 2023.  (J.A. 37 ¶ 30.)  These "apparent registration violations" allegedly breached provisions of the NVRA and "specific Maryland laws pertaining to voter registration."  (J.A. 38-39 ¶¶ 33-40.)  The "violations" also allegedly contravened HAVA's voting system requirements related to error rates.  (J.A. 42 ¶ 62.)  Maryland Election Integrity sought judgment declaring the State Board in violation of those federal and state laws.  (J.A. 61 ¶ B.)

Second, the complaint alleged that 62,075 "apparent voting system errors in counting votes" affected the conduct of the 2020 general election in Maryland and that 27,623 such errors affected the conduct of the 2022 general election.  (J.A. 43 ¶¶ 68-69.)  According to the complaint, these "apparent" errors exceeded the "maximum allowable error rate" imposed on voting systems by HAVA.  (J.A. 43

---

[1] Unless otherwise noted, this brief's references to "the complaint" are to the complaint that was operative when the court dismissed the case.  The original complaint (ECF No. 1) did not include allegations about any individual members of either plaintiff organization and alleged that the State Board had violated only the "Findings and Purposes" provision of the NVRA (ECF No. 1, at 6 ¶ 27).  The State Board moved to dismiss the original complaint for its failures to establish standing and present a "substantial" federal question.  (ECF No. 8.)  In response, Maryland Election Integrity filed an amended complaint—the operative complaint—that included allegations about one member, Katherine Sullivan, and added requests for a writ of mandamus and relief under 42 U.S.C. § 1983.  (J.A. 32.)

¶¶ 72-73.) Maryland Election Integrity sought judgment declaring as much. (J.A. 61 ¶ C.)

Third, the complaint alleged that the State Board "did not review the source code for ES&S EVS 5.2.0.0" in 2017. (J.A. 47 ¶ 99.)

Fourth, the complaint alleged that the State Board had used voting systems with "void" Election Assistance Commission certifications during "elections" prior to 2017. (J.A. 49-51 ¶¶ 120-121, 125, 128.)

Fifth, the complaint alleged that the State Board had responded inadequately to requests made under the Maryland Public Information Act for voting system audit logs. (J.A. 51 ¶¶ 131-132, J.A. 54, ¶ 155.)

And sixth, the complaint alleged that the State Board had inadequately responded to Maryland Public Information Act requests investigating a theory of Maryland's voting systems improperly counting "blank ballots." (J.A. 55 ¶¶ 159-161, J.A. 58 ¶¶ 183-184.)

Maryland Election Integrity pled the third, fourth, and fifth allegations as violations of state law (J.A. 47 ¶ 100, J.A. 50 ¶ 124, J.A. 54 ¶ 150,), and the sixth as a violation of federal and state law (J.A. 55 ¶ 158, J.A. 56 169, J.A. 58 ¶¶ 178–179, J.A. 59 ¶ 186), requesting declaratory judgment on each (J.A. 61 ¶¶ D, E, F, G).

Maryland Election Integrity sought declaratory judgment as to all of these purported violations of law. (J.A. 61 ¶¶ B-G.) In addition, it sought injunctive relief.

(J.A. 66-67 ¶¶ A-O.)  The injunctive relief it sought, however, would not merely have directed the State Board to comply with the laws specified in the complaint.  Instead, the complaint asked the district court to impose a particular voter registration system and voting system on the State.  (J.A. 66-68.)  And until that time, Maryland Election Integrity asked the district court to enjoin the administration or certification of any election in Maryland and to appoint a special master to "guide" the State Board in adopting an acceptable voting system.  (J.A. 67-68 ¶ M.)

### The Complaint's Standing Allegations

In the complaint, the two plaintiffs sought to establish standing only through Maryland Election Integrity and its members.  (J.A. 34 ¶¶ 9-12.)  The complaint stated that United Sovereign Americans was "not seeking a distinct form of relief" from Maryland Election Integrity and, therefore, did not need to establish standing separately.  (J.A. 34 ¶¶ 13-14 (citing *Horne v. Flores*, 557 U.S. 433, 446 (2009).)

Maryland Election Integrity pled that it was a limited liability company with "members who are registered voters in the state of Maryland."  (J.A. 32 ¶ 1, J.A. 34 ¶ 9.)  The complaint identified only Kate Sullivan, a Baltimore County resident, as a member.  (J.A. 34 ¶ 10.)  It alleged that Ms. Sullivan had observed voter registration discrepancies (J.A. 34 ¶ 10); that she was "personally injured by the inaccurate voter registration records of Baltimore County, and the state, which has

allowed otherwise ineligible voters to vote, thus diluting her vote" (J.A. 39 ¶¶ 43-46), and that she fears "threatened injury that her ballot was cast blank without notice to her" (J.A. 57 ¶ 170). Maryland Election Integrity did not plead, however, that Ms. Sullivan had voted in the 2020 or 2022 general elections. Similarly, it made no allegation concerning candidates or causes she supported, much less that those candidates or causes were defeated because of the State Board's alleged actions. Finally, the complaint did not address whether Ms. Sullivan planned on voting in the 2024 primary or general elections.

Maryland Election Integrity did not plead any direct injury to itself. It was created, according to the complaint, "for the purpose of resolving violations of Maryland law and restoring trust in Maryland Elections." (J.A. 40 ¶ 49.) The complaint did not allege that the State Board's actions interfered with that purpose; rather, according to the complaint, the "interests at stake in this complaint are germane to Maryland Election Integrity's purpose." (J.A. 40 ¶ 50.)

A week after filing the operative complaint, Maryland Election Integrity requested a preliminary injunction to halt Maryland's presidential primary election while that election was ongoing. (J.A. 3.) The company supported its injunctive request with 84 exhibits, including an affidavit from one David Morsberger. (J.A. 3.) In parallel, the State Board moved to dismiss the case on various grounds, including lack of standing and lack of subject matter jurisdiction. (J.A. 4.)

The district court granted the motion to dismiss.  (J.A. 322.)  Acknowledging that Maryland Election Integrity alleged "numerous" problems with Maryland's voting system, the district court nonetheless ruled that it could "begin and end its analysis with plaintiffs' standing."  (J.A. 316.)  Maryland Election Integrity lacked organizational standing to maintain its suit, the district court explained, because it did not plead any obstruction or impediment to its organizational activities.  (J.A. 317-318.)  Further, it lacked representational standing because it failed to show how any of its members, including Ms. Sullivan, were disadvantaged by the conduct alleged in the complaint.  (J.A. 318-320.)  The district court thus dismissed the complaint, without prejudice, for lack of subject matter jurisdiction.  (J.A. 320.)

Because the district court dismissed the complaint for lack of standing, it denied the preliminary injunction motion as moot.  (J.A. 322.)  The court noted, however, that even had Maryland Election Integrity established standing, the request for a preliminary injunction would have been denied because of the company's unreasonable delay in filing suit and seeking injunctive relief.  (J.A. 321 n. 3.)

## SUMMARY OF ARGUMENT

1.      The district court was correct to conclude that Maryland Election Integrity had not established standing to sue because it had not established injury-in-fact.  Maryland Election Integrity tried to plead representational standing, which required it to show that one of its members suffered an injury as a result of the federal

9

and state law violations the organization alleged. *North Carolina St. Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020). Maryland Election Integrity failed to do so, making no showing that any member was electorally disadvantaged in any election. For its membership at large, Maryland Election Integrity failed to plead whether members voted in any past Maryland election, much less how those members' voting preferences may have been disadvantaged by the facts alleged in the complaint. And for Katherine Sullivan, Maryland Election Integrity failed to plead a cognizable injury-in-fact, alleging only that she suffered unspecified vote dilution (J.A. 39 ¶ 46) and "fear" of having cast a blank ballot (J.A. 57 ¶ 170).

2.    Dismissal on jurisdictional grounds would have been equally appropriate for failure to raise a cognizable federal question. Although Maryland Election Integrity's complaint cited to federal statutes, it did not plead a "substantial" federal claim, as required for federal jurisdiction to exist. Some of the allegations it made in connection with federal law were mere requests for relief involving no federal claim. As for the complaint's invocation of substantive federal statutes, HAVA does not supply a private right of action; the NVRA allows for private enforcement only after the plaintiff complies with notice requirements; and § 1983 claims cannot be brought against a state or state agency. Maryland Election Integrity therefore presented the district court with no federal question and, accordingly, failed to vest the court with subject matter jurisdiction under 28 U.S.C. § 1331.

# ARGUMENT

## I. DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION IS REVIEWED DE NOVO; THIS COURT CAN AFFIRM THE DISMISSAL ON STANDING OR ANY GROUND APPARENT IN THE RECORD.

The dismissal of Maryland Election Integrity's complaint for lack of standing is reviewed de novo. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). This Court is not confined to reviewing only Maryland Election Integrity's standing, though. "In determining whether subject matter jurisdiction exists, [this Court is] not limited to the grounds relied on by the district court, but rather may affirm on any grounds apparent from the record." *North Carolina Ins. Guaranty Assoc. v. Becerra*, 55 F. 4th 428, 433 (4th Cir. 2022).

## II. THE DISTRICT COURT WAS CORRECT TO DISMISS THE COMPLAINT BECAUSE MARYLAND ELECTION INTEGRITY DID NOT SHOW THAT ITS MEMBERS SUFFERED AN ELECTORAL INJURY-IN-FACT.

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. Maintaining a case or controversy requires a plaintiff to establish, among other things, standing to sue— that is, a "personal stake in the outcome of the controversy." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020) (citation omitted). To establish standing, the plaintiff must sufficiently plead "injury in fact, causation, and redressability." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). The failure to establish standing is a failure to

establish subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

An "injury in fact" is an injury that is "concrete," "particularized," and "actual or imminent, not conjectural or hypothetical." *Bell*, 964 F.3d at 258-59 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs must identify a harm—that is, an "invasion of a legally protected interest"—and must adequately identify how that harm affects them "in a personal and individual way." *Gill v. Whitford*, 585 U.S. 48, 64 (2018) (quoting *Lujan*, 504 U.S. at 560 n. 1)). Asserting the violation of an interest "which is held in common by all members of the public" fails as a matter of law to establish Article III standing. *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 220 (1974).

Here, the complaint attempted to establish standing only for Maryland Election Integrity.[2] As an organizational plaintiff, Maryland Election Integrity could have satisfied the requirements of standing in one of two ways: by showing injury "in its own right" or by showing injury as "a representative of its members." *Southern Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands*, 713 F.3d 175, 182 (4th Cir. 2013).

---

[2] The complaint acknowledged that United Sovereign Americans could not "satisfy independently the demands of Article III" (J.A. 34 ¶ 13) and that any alleged controversy existed only between the State Board and Maryland Election Integrity (J.A. 59 ¶ 189).

On appeal, Maryland Election Integrity argues only that it established standing as a representative of its members, not in its own right. Appellants' Br. 35. To make that showing, Maryland Election Integrity had to demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Univ.*, 600 U.S. 181, 199 (2023).

### A.   Maryland Election Integrity Did Not Allege That Its Unnamed Members Suffered a Cognizable Injury.

Maryland Election Integrity failed to demonstrate that any of its members would have standing to sue in their own right. To do so, it would have had to show more than generalized grievances about the conduct of elections, because plaintiffs' standing in election and voting rights challenges is naturally entwined with their "individual and personal" right to vote. *Gill*, 138 S. Ct. at 1929 (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "'[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill*, 138 S. Ct. at 1929 (quoting *Baker*, 369 U.S. at 206). In contrast, voters who fail to plead any personal disadvantage or impairment of the ability to vote cannot maintain Article III standing. *See, e.g.*, *Bell*, 964 F.3d at 260 (holding that a North Carolina voter challenging state write-in vote restrictions had failed to

13

establish standing by failing to allege how restrictions had impaired his personal ability to cast a write-in vote).

The complaint did not adequately plead standing as to Maryland Election Integrity's members at large.  Maryland Election Integrity was obligated to plead "facts showing disadvantage to [its members] as individuals." *Gill*, 138 S. Ct. at 1929.  Instead, it provided only conclusory assertions that its  members "have been and are currently harmed" (J.A. 34 ¶ 11) and that voter registration and voting system errors had diluted "Plaintiff's votes" (J.A. 63 ¶ 199).  And it provided no further factual allegations about members' participation in any specific Maryland election, or about any harm they suffered different from the hypothetical harm any eligible voter might suffer from the alleged violation of election laws.  Indeed, the complaint did not even allege whether the members of Maryland Election Integrity had voted in any Maryland election, much less how the State Board defeated its members' supported candidates or causes.   These failings were fatal to any effort to establish standing based on Maryland Election Integrity's membership at large.  *See United States v. Hayes*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power"); *see also Gibson Frederick County*,  2022 WL 17740406,  at *5   (D. Md. Dec. 16, 2022). (collecting

cases in which recent suits alleging widespread electoral violations were dismissed to due to lack of standing).

### B.    Maryland Election Integrity Did Not Allege That Kate Sullivan Suffered a Cognizable Injury.

Although Maryland Election Integrity sought to assert representational standing through one member, Kate Sullivan (J.A. 34 ¶ 10), that effort was insufficient.  For its NVRA claim, Maryland Election Integrity alleged that Ms. Sullivan's injury-in-fact was vote dilution, purportedly stemming from "inaccurate voter registration records" in Baltimore County.  (J.A. 39 ¶ 46.)[3]  Maryland Election Integrity did not make clear what vote was diluted, though.  The complaint did not specify whether Ms. Sullivan voted, what election she voted in, whether she voted for federal office in an election, what candidates or causes she voted for, or whether her vote was actually accepted, canvassed, and tallied.  Thus, the complaint provided no basis for understanding how Ms. Sullivan may have been disadvantaged electorally by the alleged inaccuracies in Baltimore County's voter registration records.

---

[3] This was the only harm that Maryland Election Integrity identified in relation to its NVRA allegations.  To the extent that it now argues that Ms. Sullivan was aggrieved in other ways by alleged violations of the NVRA, Appellants' Br. 13-16, those arguments cannot form the basis for standing because "[i]t is well established that this court does not consider issues raised for the first time on appeal absent exceptional circumstances." *De Simone v. VSL Pharms.*, 36 F. 4th 518, 528 (4th Cir. 2022).

Moreover, vote dilution, as Maryland Election Integrity uses the term, is not an injury-in-fact. Vote dilution, as the Supreme Court has defined the term, "refers specifically to 'invidiously minimizing or canceling out the voting potential *of racial or ethnic minorities*.'" *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (quoting *Abbott v. Perez*, 585 U.S. 579, 586 (2018)) (emphasis in original). Racial or ethnic gerrymandering can give rise to a measurable injury for a cohesive group of voters, making vote dilution, as the Supreme Court has defined the term, an injury-in-fact. But the reduction in value of a single vote stemming from an unknown quantity of invalid ballots being cast is neither a "concrete" injury nor a "particularized" injury for purposes of standing. *See Circosta*, 494 F. Supp. 3d at 312 (collecting cases). In relation to its NVRA claim, then, Maryland Election Integrity failed to establish representational standing through the harm it ascribed to Ms. Sullivan.

Equally inadequate were its efforts to establish standing through Ms. Sullivan with respect to its HAVA claim, which focused on the alleged casting of blank ballots. (J.A. 57 ¶ 170). First, Maryland Election Integrity did not plead that any harm involving blank ballots had occurred. It asserted only that "[s]ome counties had much higher percentages of blank ballot[s] than others" and that "[p]ossible reasons" for the difference in percentages could "be explained below." (J.A. 55 ¶ 162-163). The complaint then hypothesized that Maryland's ballot scanners could

16

have been configured in such a way as to violate HAVA by accepting blank ballots without warning the voter. (J.A. 56 ¶ 169 ("*If* Always Accept is selected on voting machines, voters are not provided the opportunity to change the ballot or correct the error before the ballot is cast or counted. This violates [HAVA] . . . ." (emphasis added).) But the complaint did not allege that this hypothetical scenario actually had taken place.[4]

Second, Maryland Election Integrity could not avoid this shortcoming in its pleading by alleging that the hypothetical possibility of harm created "fear and threatened injury" to Ms. Sullivan. (J.A. 57 ¶ 170); *see* Appellants' Br. 9. The complaint did not allege that Ms. Sullivan knew, or even had any supportable basis to believe, that any ballot she had previously cast was recorded as blank without her knowledge. Indeed, it did not even allege that she had voted. Thus, Ms. Sullivan's fear of past possible injury was not "concrete and particularized," *Bell*, 964 F.3d at 258-59 (quoting *Lujan*, 504 U.S. at 560); it was "conjectural," and "hypothetical," *id*, precluding it from qualifying as a basis for standing. And while "threatened

---

[4] The complaint instead alleged that certain "configuration reports" and "audit logs" from Maryland's voting equipment *could* indicate if ballot scanners were configured improperly (J.A. 57 ¶ 176, J.A. 58 ¶ 179) and that "audit logs were . . . requested through [Maryland Public Information Act] requests" (J.A. 58 ¶ 180). To the extent that Maryland Election Integrity's allegation of harm related to blank ballots was the inability to obtain requested documents, that allegation failed to support standing for the reasons explained at page 19 below.

injury" can sometimes support standing, the term refers to a future, "impending" injury-in-fact. *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017)—not the hypothetical, past injury that Maryland Election Integrity tried to allege here.  On that score, the complaint did not allege that Ms. Sullivan knew, or had any supportable basis to believe, that any ballot she might cast in the future would be recorded as blank.

### C.    Maryland Election Integrity Did Not Allege That David Morsberger Was a Member.

On appeal, Maryland Election Integrity seeks to establish representational standing through a second person, David Morsberger.  Appellants' Br. 7-8.  It asserts that Mr. Morsberger's affidavit, attached to a motion for injunctive relief filed one week after the operative complaint (*see* J.A. 3), established that he both was a registered voter and had voted in previous Maryland elections.  Appellants' Br. 8.  Thus, according to Maryland Election Integrity, Mr. Morsberger was entitled to assert injuries-in-fact under HAVA, the NVRA, and state law, and so was the organization.  Appellants' Br. 8.

Even if Maryland Election Integrity could establish standing through an argument made for the first time on appeal, the purported harm to Mr. Morsberger would not suffice.  That is because Mr. Morsberger did not aver that he was a member of Maryland Election Integrity, nor did the complaint allege as much.  Maryland Election Integrity's argument on appeal thus founders on the precept that

an organization seeking to establish representational standing can do so only as "a representative *of its members*." *Southern Walk*, 713 F.3d at 182 (emphasis added).

**D.     Maryland Election Integrity Did Not Allege That Any Member Was Harmed by the State Board's Response to Public Information Requests.**

Finally, Maryland Election Integrity did not establish representational standing based on the State Board's handling of Maryland Public Information Act requests.  In alleging violations of this statute, the complaint specified only that requests under the state information access law "were made" (J.A. 51 ¶ 128) or "were requested" (J.A. 54, ¶ 149, J.A. 58-59 ¶¶ 180, 185), using the passive voice in both cases.  The complaint did not allege that Ms. Sullivan or any member of Maryland Election Integrity made the requests, let alone allege what responses they may have received.  Those allegations are necessary to show injury, however, as state law provides a cause of action only to a person who is "denied inspection of a public record or is not provided with a copy, printout, or photograph of a public record as requested."  Md. Code Ann., Gen. Prov. § 4-362(a)(1) (LexisNexis 2019).  Because Maryland Election Integrity did not allege that any of its members had requested and been denied public records, it could not claim that any of its members had been injured by a violation of the Maryland Public Information Act.

## III. THE DISTRICT COURT ALSO LACKED JURISDICTION OVER MARYLAND ELECTION INTEGRITY'S COMPLAINT BECAUSE IT DID NOT PRESENT A COGNIZABLE FEDERAL QUESTION.

A district court possesses subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Maryland Election Integrity invoked this federal question jurisdiction as its basis to sue in federal court. (J.A. 33 ¶ 4.) But "[t]he mere assertion of a federal claim is not sufficient to obtain jurisdiction under 28 U.S.C. § 1331." *PEM Entities v. County of Franklin*, 57 F.4th 178, 183 (4th Cir. 2023). Rather, the asserted federal claim must be "substantial." *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988). An "insubstantial" federal claim—that is, one plainly foreclosed by prior judicial decisions with no room for controversy between the parties—fails to vest a district court with subject matter jurisdiction. *Id.* at 651; *see also Dinkins v. Region Ten CSB*, 289 F. Supp. 3d 756, 758-59 (W.D. Va. 2018) (finding federal question jurisdiction lacking where plaintiff alleged violations of the Federal Rules of Civil Procedure and the Rules of Decision Act, in addition to state law claims). This limitation on federal jurisdiction "is especially important where a wholly frivolous federal claim serves as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Lovern v. Edwards*, 190 F. 3d 648, 655 (4th Cir. 1999).

A claim is insubstantial when it is, among other things, "completely devoid of merit." *PEM Entities*, 57 F.4th at 184 (quoting *Oneida Indian Nation v. Oneida County*, 414 U.S. 661, 666 (1974)). Factual lack of merit results when the facts pled affirmatively contradict the legal requirements of the claim pled. *Compare Davis*, 856 F.2d at 651-52 (holding appellant's due process claim was insubstantial because "essence" of due process is notice and opportunity to be heard, and appellant had affirmatively plead that she received notice and a "full hearing before an impartial panel"), *with PEM Entities*, 57 F.4th at 184 (holding that appellant's equal protection claim was substantial even though appellant had failed to plead adequate facts to support claim, because such insufficiency of factual support was a merits issue under Rule 12(b)(6) and not a jurisdictional issue under Rule 12(b)(1)). Legal lack of merit results when "prior decisions inescapably render the claims frivolous." *Hagans v. Levine*, 415 U.S. 528, 538 (1974).

Here, the majority of violations alleged by Maryland Election Integrity related to state laws governing election operations and public information access. (*See* J.A. 39 ¶ 41, J.A. 47, ¶ 100, J.A. 50–51, ¶¶ 124-125, 131-132, J.A. 55, ¶ 157, J.A. 58-59, ¶¶ 178–84, 189.) The complaint's reliance on federal law consisted of procedural recourse to the federal Declaratory Judgment Act and the federal mandamus statute, as well as substantive allegations relating to HAVA, the NVRA, and 42 U.S.C. § 1983. None of this was sufficient to vest the district court with jurisdiction: The

procedural mechanisms for relief that Maryland Election Integrity raised did not create federal question jurisdiction, and the allegations related to HAVA, the NVRA, and § 1983 did not raise a "substantial" federal claim.

### A. Maryland Election Integrity's Requests for Federal Statutory Relief Could Not Provide the District Court with Federal Question Jurisdiction.

In the jurisdictional section of its complaint, Maryland Election Integrity pled that the district court "ha[d] authority to issue a declaratory judgment and to order injunctive and other relief" under the Declaratory Judgment Act, 28 U.S.C. § 2201. (J.A. 33 ¶ 6.)  Those allegations did not give the district court jurisdiction, for that statute "alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021).  Declaratory judgment under § 2201 is merely a potential remedy for *other* causes of action.  *E.g.*, *CGM, LLC v. BellSouth Telecommunications*, 664 F.3d 46, 56-57 (4th Cir. 2011).  Maryland Election Integrity therefore could not rely on a request for federal declaratory judgment as a basis for federal question jurisdiction.

It also could not rely on the federal mandamus statute.  Maryland Election Integrity asked the district court to issue a writ of mandamus under 28 U.S.C. § 1361 (J.A. 68-70 ¶¶ 214-223), asserting that a federal district court possesses "original jurisdiction for any action in the nature of mandamus" (J.A. 33 ¶ 5).  But a district court's exercise of "original jurisdiction" to issue a writ of mandamus extends only

to compelling "an officer or employee of the United States or any agency thereof to

perform a duty." 28 U.S.C. § 1361. The Maryland State Board of Elections is not

an officer, employee, or agency of the United States. The district court therefore did

"not have jurisdiction to issue a writ of mandamus requiring state employees to act."

*White v. City of Annapolis*, 439. F. Supp. 3d 522, 544 (D. Md. 2020); *see also Gurley*

*v. Superior Ct. of Mecklenberg County*, 411 F.2d 586, 587 (4th Cir. 1969).

### B.    Maryland Election Integrity's Allegations Relating to HAVA, the NVRA, and Section 1983 Did Not Present a "Substantial" Federal Claim.

Maryland Election Integrity failed to state a "substantial" federal claim under

HAVA, the NVRA, or § 1983 because, under well-established law, none of these

statutes provided a basis for it to sue the State Board. To begin, HAVA provides no

private cause of action. *See, e.g. Brunner v. Ohio Republican Party*, 555 U.S. 5, 6

(2008); *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *American Civil Rts.*

*Union*, 872 F.3d at 181 (3d Cir. 2017) ; *Sandusky County Democratic Party v.*

*Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004); *Georgia Voter Alliance v. Fulton*

*County*, 499 F. Supp. 3d 1250, 1256 (N.D. Ga. 2020); *Texas Voters Alliance v.*

*Dallas County*, 495 F. Supp. 3d 441, 458-59 (E.D. Tex. 2020). Instead, HAVA

provides two other methods of enforcement: (1) civil suits for declaratory or

injunctive relief brought by the United States Attorney General, 52 U.S.C. § 21111;

and (2) "State-based administrative complaint procedures,"[5] 52 U.S.C. § 21112(a)(1). Thus, although Maryland Election Integrity alleged that the State Board violated various provisions of HAVA (J.A. 42-44 ¶¶ 64-75), those allegations could not give rise to a "substantial" federal claim.

Maryland Election Integrity's attempt to invoke § 1983 did not cure that failing. The complaint alleged that "any violation of HAVA by Defendant is a violation of a fundamental right" redressable under 42 U.S.C. § 1983. (J.A. 44 ¶ 80.) It thus claimed that the alleged violation of HAVA's ballot review requirement "creates a cause of action under 42 U.S.C. § 1983." (J.A. 56 ¶ 169.) But the State Board, as a state agency, is not a "person" amenable to suit under § 1983. *See, e.g.*, *Timpson v. Anderson County Disabilities and Special Needs Bd.*, 41 F.4th 238, 258-59 (4th Cir. 2022). Thus, whether or not HAVA may ever be enforceable through § 1983 (and the State Board maintains that the provisions of HAVA cited by

---

[5] As HAVA requires, Maryland provides an administrative complaint procedure for alleged violations of HAVA's voting system requirements. *See* COMAR 33.01.05.01 – 33.01.05.08 (providing an administrative process for the filing and adjudication of complaints alleging violations of pertinent HAVA provisions). Maryland Election Integrity alleged that its members "and volunteers" exhausted every administrative remedy known to them in advance of the 2022 general election." (J.A. 44 ¶ 76.) In support of that assertion, though, Maryland Election Integrity appended to its complaint a single administrative complaint form, completed by a person with no evident connection to either of the plaintiff organizations, that was dated the day before the 2022 gubernatorial general election. (J.A. 81).

Maryland Election Integrity are not), the companies could not maintain a § 1983 action against the State Board.

Maryland Election Integrity's allegations that the State Board had violated the NVRA were likewise deficient as a basis for jurisdiction. (J.A. 38 ¶¶ 33-41.) Although the NVRA does provide a private cause of action, 52 U.S.C. § 20510(b)(1), that cause of action includes, as a condition precedent, a notice requirement that Maryland Election Integrity did not meet, 52 U.S.C. § 20510(b)(2). Specifically, the statute requires a plaintiff to provide "written notice of the violation to the chief election official of the State involved." *Id.* The complaint did not allege, though, that Maryland Election Integrity had transmitted to the State Board any formal pre-suit notice of its voter registration allegations, foreclosing the company's ability to bring an action under the NVRA against the State Board. As a result, any claim under the NVRA was not "substantial." *See, e.g.*, *Scott*, 771 F.3d at 836 ("[Appellant's] failure to provide notice is fatal to his [NVRA] suit."); *Judicial Watch v. Pennsylvania,* 524 F. Supp. 3d 399, 408-09 (M.D. Pa. 2021) ("Notice is a precondition to filing a suit under the NVRA.")

Maryland Election Integrity's attempts to plead otherwise were insufficient. The complaint alleged that Ms. Sullivan "sent a notice of violation to MDSBE in a press release on November 8, 2023" and "attempted to bring apparent violations to the Baltimore County Board of Elections (BCBOE) attention." (J.A. 39 ¶ 43-44.)

But the Baltimore County Board of Elections is a different entity from the State Board of Elections. *Compare* Md. Code Ann., Elec. Law §§ 2-101 – 2-102 (LexisNexis 2023) (establishing a State Board with specified duties and powers), *with id.* §§ 2-201 – 2-202 (establishing local boards of elections in each county with different duties and powers). And Ms. Sullivan's press release was just that—a press release. (J.A. 74.) It was not addressed to or directed at the State Board. (J.A. 74.) It was published before Maryland Election Integrity, LLC, existed. (*See* ECF No. 8-2 (Articles of Organization establishing that Maryland Election Integrity was created on January 22, 2024).) And it could not have related the NVRA violations that Maryland Election Integrity alleged in its suit against the State Board, because those allegations were drawn from a report published four months after the press release (*compare* J.A. 16, J.A. 38 ¶¶ 34-39 *with* J.A. 74).

None of Maryland Election Integrity's allegations, in short, presented the district court with a "substantial" federal claim. Dismissal for lack of jurisdiction therefore was appropriate for this reason, too. *Lovern*, 190 F.3d at 654.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Daniel M. Kobrin

_____

DANIEL M. KOBRIN
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.state.md.us
(410) 576-6472
(410) 576-6955 (facsimile)

Attorneys for the Maryland State
Board of Elections

## REQUEST FOR ORAL ARGUMENT

The State Board requests that the Court hear oral argument in this appeal, as the underlying case seeks to change the manner in which the State Board conducts elections, including during the course of the 2024 presidential election cycle.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,099 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Daniel M. Kobrin

_____

Daniel M. Kobrin

# TEXT OF PERTINENT PROVISIONS

**United States Code, Title 28 – Judiciary and Judicial Procedure**

### § 2201. Creation of Remedy.

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act, or section 351 of the Public Health Service Act.

### § 1361. Action to compel an officer of the United States to perform his duty.

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

**United States Code, Title 52 – Voting and Elections**

### § 20510. Civil enforcement and private right of action.

(a) Attorney General

29

The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.

(b) Private right of action

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

(c) Attorney's fees

In a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs.

(d) Relation to other laws

(1) The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965 ( 42 U.S.C. 1973 et seq.).

(2) Nothing in this chapter authorizes or requires conduct that is prohibited by the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.).

### § 21111. Actions by the Attorney General for declaratory and injunctive relief.

The Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, and 21083 of this title.

### § 21112. Establishment of State-based administrative complaint procedures to remedy grievances.

(a) Establishment of State-based administrative complaint procedures to remedy grievances

(1) Establishment of procedures as condition of receiving funds

If a State receives any payment under a program under this chapter, the State shall be required to establish and maintain State-based administrative complaint procedures which meet the requirements of paragraph (2).

(2) Requirements for procedures

The requirements of this paragraph are as follows:

(A) The procedures shall be uniform and nondiscriminatory.

(B) Under the procedures, any person who believes that there is a violation of any provision of subchapter III (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

(C) Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

(D) The State may consolidate complaints filed under subparagraph (B).

(E) At the request of the complainant, there shall be a hearing on the record.

31

(F) If, under the procedures, the State determines that there is a violation of any provision of subchapter III, the State shall provide the appropriate remedy.

(G) If, under the procedures, the State determines that there is no violation, the State shall dismiss the complaint and publish the results of the procedures.

(H) The State shall make a final determination with respect to a complaint prior to the expiration of the 90-day period which begins on the date the complaint is filed, unless the complainant consents to a longer period for making such a determination.

(I) If the State fails to meet the deadline applicable under subparagraph (H), the complaint shall be resolved within 60 days under alternative dispute resolution procedures established for purposes of this section. The record and other materials from any proceedings conducted under the complaint procedures established under this section shall be made available for use under the alternative dispute resolution procedures.

(b) Requiring Attorney General approval of compliance plan for States not receiving funds

(1) In general

Not later than January 1, 2004, each nonparticipating State shall elect-

(A) to certify to the Commission that the State meets the requirements of subsection (a) in the same manner as a State receiving a payment under this chapter; or

(B) to submit a compliance plan to the Attorney General which provides detailed information on the steps the State will take to ensure that it meets the requirements of subchapter III.

(2) States without approved plan deemed out of compliance

A nonparticipating State (other than a State which makes the election described in paragraph (1)(A)) shall be deemed to not meet the requirements

of subchapter III if the Attorney General has not approved a compliance plan submitted by the State under this subsection.

(3) Nonparticipating State defined

In this section, a "nonparticipating State" is a State which, during 2003, does not notify any office which is responsible for making payments to States under any program under this chapter of its intent to participate in, and receive funds under, the program.

## Annotated Code of Maryland, General Provisions Article (LexisNexis 2019)

### § 4-362. Judicial Review.

(a)(1) *Complaint filed with circuit court* – Subject to paragraph (3) of this subsection, whenever a person or governmental unit is denied inspection of a public record or is not provided with a copy, printout, or photograph of a public record as requested, the person or governmental unit may file a complaint with the circuit court.

(2) Except as otherwise provided in Subtitle 1A of this title and subject to paragraph (3) of this subsection, an applicant, a complainant, or a custodian may appeal to the circuit court a decision issued by the State Public Information Act Compliance Board as provided under § 4-1A-10 of this title.

(3) A complaint or an appeal under this subsection shall be filed with the circuit court for the county where:

(i) for appeals of decisions by the Board issued in accordance with the Board's authority under § 4-1A-04(b) of this title, the applicant resides or has a principal place of business;

(ii) the complainant resides or has a principal place of business; or

(iii) the public record is located.

(b)(1) *Defendant* – Unless, for good cause shown, the court otherwise directs, and notwithstanding any other provision of law, the defendant shall

33

serve an answer or otherwise plead to the complaint within 30 days after service of the complaint.

(2) The defendant:

(i) has the burden of sustaining a decision to:

1. deny inspection of a public record; or

2. deny the person or governmental unit a copy, printout, or photograph of a public record; and

(ii) in support of the decision, may submit a memorandum to the court.

(c)(1) *Authority of court* – Except for cases that the court considers of greater importance, a proceeding under this section, including an appeal, shall:

(i) take precedence on the docket;

(ii) be heard at the earliest practicable date; and

(iii) be expedited in every way.

(2) The court may examine the public record in camera to determine whether any part of the public record may be withheld under this title.

(3) The court may:

(i) enjoin the State, a political subdivision, or a unit, an official, or an employee of the State or of a political subdivision from:

1. withholding the public record; or

2. withholding a copy, printout, or photograph of the public record;

(ii) issue an order for the production of the public record or a copy, printout, or photograph of the public record that was withheld from the complainant; and

34

(iii) for noncompliance with the order, punish the responsible employee for contempt.

(d)(1) *Damages* – A defendant governmental unit is liable to the complainant for statutory damages and actual damages that the court considers appropriate if the court finds that any defendant knowingly and willfully failed to:

(i) disclose or fully to disclose a public record that the complainant was entitled to inspect under this title; or

(ii) provide a copy, printout, or photograph of a public record that the complainant requested under § 4-205 of this title.

(2) An official custodian is liable for actual damages that the court considers appropriate if the court finds that, after temporarily denying inspection of a public record, the official custodian failed to petition a court for an order to continue the denial.

(3) Statutory damages imposed by the court under paragraph (1) of this subsection may not exceed $1,000.

(e)(1) *Disciplinary action* – Whenever the court orders the production of a public record or a copy, printout, or photograph of a public record that was withheld from the applicant and, in addition, finds that the custodian acted arbitrarily or capriciously in withholding the public record or the copy, printout, or photograph of the public record, the court shall send a certified copy of its finding to the appointing authority of the custodian.

(2) On receipt of the statement of the court and after an appropriate investigation, the appointing authority shall take the disciplinary action that the circumstances warrant.

(f) *Costs* – If the court determines that the complainant has substantially prevailed, the court may assess against a defendant governmental unit reasonable counsel fees and other litigation costs that the complainant reasonably incurred.

(g) *Appeals* – Notwithstanding § 12-302(a) of the Courts Article, a party who is aggrieved by a final judgment of a circuit court in a judicial

35

review proceeding under subsection (a)(2) of this section may appeal to the Appellate Court of Maryland in the manner that law provides for appeal of civil cases.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| MARYLAND ELECTION INTEGRITY, LLC, ET AL., | * | |
| *Plaintiffs-Appellants*, | * | No. 24-1449 |
| v. | * | |
| MARYLAND STATE BOARD OF ELECTIONS, | * | |
| *Defendant-Appellee*. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CERTIFICATE OF SERVICE**

I certify that, on this 8th day of August, 2024, the Brief of Appellee was filed electronically and served on.

> C. Edward Hartman, III
> 116 Defense Highway
> Suite 300
> Annapolis, Maryland  21401
> ed@hartman.law

/s/ Daniel M. Kobrin

_____

Daniel M. Kobrin