**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1449**

MARYLAND ELECTION INTEGRITY, LLC; UNITED SOVEREIGN AMERICANS, INC.,

Plaintiffs – Appellants,

v.

MARYLAND STATE BOARD OF ELECTIONS,

Defendant – Appellee,

and

BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW,

Amicus Curiae.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:24-cv-00672-SAG)

Argued: December 12, 2024 Decided: February 4, 2025

Before WILKINSON, NIEMEYER, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

**ARGUED:** Bruce Lee Castor, Jr., VAN DER VEEN, O'NEILL, HARTSHORN & LEVIN, Philadelphia, Pennsylvania, for Appellants. Daniel Michael Kobrin, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** C. Edward Hartman, III, HARTMAN, ATTORNEYS AT LAW, Annapolis, Maryland, for Appellants. Anthony G. Brown, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

WYNN, Circuit Judge:

Plaintiffs-Appellants, a Maryland LLC and a Missouri nonprofit corporation, allege that Defendant-Appellee, the Maryland State Board of Elections, mismanaged state electoral operations in violation of state and federal laws. The district court dismissed the complaint without prejudice for lack of subject-matter jurisdiction, concluding that Plaintiffs had not alleged injuries sufficiently concrete and particularized to support Article III standing. We affirm.

I.

Maryland Election Integrity, LLC is a Maryland limited liability company; United Sovereign Americans is a Missouri nonprofit corporation. In April 2024 these two entities filed the operative amended complaint in the District of Maryland, alleging that the Maryland State Board of Elections violated state and federal election laws through its administration of the 2020 and 2022 general elections.

The complaint alleges that "Kate Sullivan, a member of Maryland Election Integrity LLC, and a Baltimore County resident[,] canvassed Baltimore County and found inaccurate voter registration records." J.A. 34 ¶ 10.[1] According to Plaintiffs, Maryland's "voter rolls are highly inaccurate, error rates on the voting systems exceed the maximum allowable error rates, voting systems were not certified correctly, machines have been used that have VOID [Election Assistance Commission] certifications, large numbers of blank ballots

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

were cast, and the [State Board] is unlawfully withholding evidence of such." J.A. 62 ¶ 199 (capitalization in original).

Plaintiffs allege that the State Board violated two federal statutes—the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. §§ 20501, 20507, and the Help America Vote Act ("HAVA"), 52 U.S.C. § 21081[2]—as well as various provisions of the Maryland election code, Md. Code Ann., Elec. Law §§ 3-101 to -02, 3-502 to -04, 9-102 to -03. As summarized by the district court, Plaintiffs allege:

> (1) inaccurate voter registration records in violation of NVRA and Maryland code,
>
> (2) erroneous votes cast in the 2020 and 2022 general elections that exceed the permissible error rates set out in HAVA and Maryland code,
>
> (3) the failure to review source code underlying voter machines in violation of HAVA's certification requirements and Maryland regulations,
>
> (4) the use of modems that compromise the security of voting machines in violation of HAVA and Maryland code, and
>
> (5) the failure to provide voters an opportunity to correct blank ballots, undervotes, and overvotes in violation of HAVA.

*Md. Election Integrity, LLC v. Md. State Bd. of Elections*, No. CV SAG-24-00672, 2024 WL 2053773, at *1 (D. Md. May 8, 2024) (citations omitted). Plaintiffs also allege that the

---

[2] Although HAVA contains no private right of action, Plaintiffs seek to enforce its standards under 42 U.S.C. § 1983. Because we dismiss for lack of subject-matter jurisdiction, we do not address whether HAVA may be enforced through an action brought under § 1983.

State Board failed to provide audit logs and configuration reports in response to requests for such records in violation of Maryland's Public Information Act, Md. Code Ann., Gen. Provis. § 4-103, -362.

Plaintiffs claim that Sullivan was "personally injured" by these violations because the State Board "allowed otherwise ineligible voters to vote, thus diluting [Sullivan's] vote." J.A. 39 ¶ 46; *see also* J.A. 63 ¶ 199 (alleging that the State Board's actions have "resulted in dilution of Plaintiff[s'] votes"). Plaintiffs also allege that Sullivan "has standing to raise this issue because a high number of blank ballots were cast in Baltimore County, creating the fear and threatened injury that her ballot was cast blank without notice to her." J.A. 57 ¶ 170. Finally, Plaintiffs allege that due to the State Board's failure to respond to public records requests, Plaintiffs are not "able to access information [to] which they are entitled." J.A. 63 ¶ 199.

The complaint seeks declaratory relief and an injunction that would, *inter alia*: mandate that the State Board "address the discrepancies" alleged; enjoin the State Board "from administering or certifying any election" suffering from such discrepancies; and appoint a Special Master to supervise the State Board's changes "prior to the November 2024 election." J.A. 66–68. The complaint also seeks a writ of mandamus "compelling [the State Board] to comply with" various "dut[ies]" under NVRA and HAVA. J.A. 69–70.[3]

---

[3] United Sovereign Americans does not "seek[] a distinct form of relief" from that sought by Maryland Election Integrity. J.A. 34 ¶ 14.

On April 15, 2024, Plaintiffs moved for a preliminary injunction to halt Maryland's presidential primary election, which was held on May 14, 2024. The State Board opposed the injunction and moved to dismiss the complaint under Rules 12(b)(1) and (6). In its motion to dismiss, the State Board argued that Plaintiffs failed to state a claim, failed to establish standing, and pleaded no cognizable federal question.

On May 8, 2024, the district court dismissed the complaint without prejudice for lack of subject-matter jurisdiction and denied the motion for a preliminary injunction as moot. The court held that neither Plaintiff satisfied the requirements of organizational standing. That is, Plaintiffs could not seek relief for injuries to themselves as organizations because they did not allege any injury to their organizational activities.[4] And Plaintiffs could not sue on behalf of their members because generalized, statewide vote dilution resulting from the alleged casting of unauthorized votes is not a "concrete or particularized injury," and the hypothetical possibility that members' ballots were cast blank in some prior election was not a "certainly impending injury." *Md. Election Integrity*, 2024 WL 2053773, at *4. The court also concluded that Plaintiffs' alleged violations of the Maryland Public Information Act did not constitute "a redressable injury in fact" because Plaintiffs did not allege that "any member of Maryland Election Integrity made the requests." *Id.* Plaintiffs timely appealed.

---

[4] The pleadings contain no information about any organizational activities apart from this lawsuit.

II.

Plaintiffs appeal the district court's holding that they lack representational standing to assert claims on behalf of individual members. Because plaintiffs do not allege concrete, particularized, or certainly impending injuries, we affirm.

A.

"We review de novo a district court's dismissal of a complaint for want of Article III standing to sue—and thus for lack of subject matter jurisdiction—under Federal Rule of Civil Procedure 12(b)(1)." *Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022). "As the party invoking federal jurisdiction," Maryland Election Integrity "has the burden of demonstrating standing for each of its" claims. *Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154 (4th Cir. 2021). The State Board's jurisdictional challenge is facial; that is, the Board contends that the complaint fails to allege facts upon which standing (and therefore subject-matter jurisdiction) can be based. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Accordingly, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

B.

As "organization[s]," Plaintiffs can demonstrate Article III standing "either in [their] own right or as a representative of [their] members." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). Plaintiffs appeal only their right to assert standing as representatives of their individual members. Plaintiffs do not appeal the district court's conclusion that "United

Sovereign Americans does not purport to represent any individual members." *Md. Election Integrity*, 2024 WL 2053773, at *3. Plaintiffs therefore seek to establish standing only as representatives of Maryland Election Integrity's individual members.[5]

To establish representational standing, Plaintiffs "must demonstrate that '(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to [each] organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). At issue here is the first element: whether Plaintiffs have demonstrated that any of their individual members would have standing to sue in their own right.

At an "irreducible constitutional minimum," Article III requires that a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,*

---

[5] The complaint asserts that Maryland Election Integrity has multiple "members who are registered voters in the state of Maryland," but the only member identified in the pleadings is Sullivan, a "Baltimore County resident." J.A. 34 ¶¶ 9–10. In their briefing, Plaintiffs assert that data scientist David Morsberger is also a member; but Morsberger's name does not appear in the complaint, and his affidavit, filed a week after the complaint, does not state that he is a member. We only consider members who were pleaded in the complaint. *See Casella v. Borders*, 404 F. App'x 800, 803 n.2 (4th Cir. 2010) (per curiam) ("The Court will not consider facts not pled, nor will it entertain facts that cannot be inferred from the bare allegations of the . . . [c]omplaint.").

*Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The parties' dispute centers on the first requirement: injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). A threatened future injury "must be *certainly impending* to constitute injury in fact"; "allegations of *possible* future injury" are not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (brackets omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Plaintiffs allege three types of injury in fact: dilution of their members' votes arising from the counting of invalid ballots, the possibility that their members' ballots were mistakenly cast blank, and violation of their members' right to access public records under the Maryland Public Information Act. We address each theory in turn.

1.

"[A] person's right to vote is 'individual and personal in nature.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "Thus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* at 65–66 (quoting *Baker v. Carr,* 369 U.S. 186, 206 (1962)). In this case, Plaintiffs allege that their members were injured by having their votes diluted. Specifically, they claim that Sullivan, a Maryland Election Integrity member, was "personally injured" by the State Board because Maryland "allowed otherwise

ineligible voters to vote, thus diluting her vote." J.A. 39 ¶ 46; *see also* J.A. 63 ¶ 199 (alleging that the State Board's actions "resulted in dilution of Plaintiff[s'] votes"). We disagree.

To be sure, "the right to vote 'can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise.'" *Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 337 (4th Cir. 2016) (quoting *Bush v. Gore*, 531 U.S. 98, 105 (2000) (per curiam)). But a claim of vote dilution needs a point of reference—diluted compared to whom? For this reason, viable "vote dilution" claims involve the uneven redistribution of voting power within a State.

For example, the "one-person, one-vote" cases involve the dilution of votes cast in certain parts of a State relative to those cast in other parts of the State: "Overweighting and overvaluation of the votes of those living *here* has the certain effect of dilution and undervaluation of the votes of those living *there*." *Reynolds*, 377 U.S. at 563 (emphases added). In the racial gerrymandering context, "intentional 'vote dilution' [involves] 'invidiously . . . minimizing or canceling out the voting potential of racial or ethnic minorities.'" *Abbott v. Perez*, 585 U.S. 579, 586 (2018) (brackets omitted) (quoting *City of Mobile v. Bolden*, 446 U.S. 55, 66–67 (1980) (plurality opinion)). Plaintiffs who bring these kinds of claims have alleged "disadvantage to themselves as individuals," relative to individual voters outside the targeted geographic, racial, or ethnic group, as the result of the manipulation of their own legislative districts. *Gill*, 585 U.S. at 66 (quoting *Baker*, 369 U.S. at 206).

By contrast, "lower courts which have addressed standing in vote dilution cases arising out of the possibility of unlawful or invalid ballots being counted, as Plaintiffs have argued here, have said that this harm is unduly speculative and impermissibly generalized because all voters in a state are affected, rather than a small group of voters." *Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) (collecting cases). For example, in 2020, a district court in Nevada concluded that the Republican National Committee and Nevada Republican Party lacked standing to bring vote-dilution claims arising from the alleged counting of "fraudulently cast votes" because that injury was "impermissibly generalized." *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 999–1000 (D. Nev. 2020). The plaintiffs sought "relief on behalf of their member voters that 'no more directly and tangibly benefits [them] than it does the public at large,'" and was therefore "'precisely the kind of undifferentiated, generalized grievance about the conduct of government' that fail[s] to confer Article III standing." *Id.* (first alteration in original) (first quoting *Lujan*, 504 U.S. at 573–74; and then quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam)). That same year, a district court in Vermont explained that "[i]f every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury." *Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020).

The same reasoning applies to Plaintiffs' claims here. The vote dilution caused by the counting of an unknown number of invalid third-party votes affects all voters in a State in the same way. That generalized injury cannot support Article III standing.

2.

Plaintiffs also allege that Sullivan has standing "because a high number of blank ballots were cast in Baltimore County, creating the fear and threatened injury that her ballot was cast blank without notice to her." J.A. 57 ¶ 170. As an initial matter, the complaint does not allege that Sullivan or any other members of Maryland Election Integrity actually voted in the 2020 or 2022 elections. Even if it did, Sullivan's fear that her past votes were submitted blank is neither concrete (Plaintiffs themselves describe this as "a real injury that may have happened to her," Opening Br. at 29) nor particularized (just like Plaintiffs' vote-dilution theory, the possibility that one voter's ballot was one of thousands mistakenly nullified statewide affects all Maryland voters in the same way). Plaintiffs allege no facts establishing that its members' ballots were more likely to have been cast blank than any other Maryland voter's ballot.

Plaintiffs argue that the threat that their members' future ballots could be cast blank is a distinct injury. "[W]hile it is true 'that threatened rather than actual injury can satisfy Article III standing requirements,'" a "threatened injury must be certainly impending to constitute injury in fact." *Beck v. McDonald*, 848 F.3d 262, 271–72 (4th Cir. 2017) (first quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000) (en banc); and then quoting *Clapper*, 568 U.S. at 410). The possibility that Plaintiffs' members' ballots might be cast blank due to the statewide mismanagement of future elections is "conjectural [and] hypothetical," not "actual or imminent." *Beck*, 848 F.3d at 270 (quoting *Spokeo*, 578 U.S. at 339). Plaintiffs' blank-ballots theory therefore fails.

3.

Finally, Plaintiffs allege that their members were injured when the State Board failed to "provide audit logs and configuration reports in violation of Maryland's Public Information Act." J.A. 315; *see* Md. Code Ann., Gen. Provis. § 4-103; J.A. 51–55 ¶¶ 131–57. The Maryland Public Information Act provides a cause of action to any "person" who "is denied inspection of a public record or is not provided with a copy, printout, or photograph of a public record as requested." Md. Code Ann., Gen. Provis. § 4-362(a)(1). Plaintiffs' complaint alleges, vaguely and in passive voice, that audit logs and configuration reports "were requested from [the State Board] and the Local Boards of Election" but were "not produced." J.A. 49 ¶ 119; *see* 52 ¶ 142; 53 ¶ 145; 54 ¶ 149; 58 ¶ 180; 59 ¶ 185. The complaint does not allege that Sullivan or any other member of Maryland Election Integrity made these requests. Plaintiffs have not carried their burden of demonstrating that any of their members would have standing to sue in their own right for injury arising from the denial of public records requests.

III.

Plaintiffs have failed to demonstrate that any of their members would have standing to sue in their own right, and therefore cannot establish standing to sue on behalf of those members. For all of these reasons, the district court properly dismissed the complaint for lack of subject-matter jurisdiction and denied Plaintiffs' motion for injunctive relief as moot.

*AFFIRMED*